R. L. BURNS v. GULF OIL CORPORATION, H. Q. DRAUGHN, R. I. HICKS,
E. L. MARTIN AND CHARLIE JOHNSTON.

(Filed 22 May, 1957.)

**1. Pleadings § 10—**

Facts alleged by defendant as the basis for its counterclaims must be
taken as true in determining whether the counterclaims are permissible
under the statute.  G.S. 1-137.

**2. Same—**

Defendant may set up a counterclaim which is permissible to any one of
the causes of action alleged by plaintiff without regard to whether plaintiff
separately alleges such cause.  G.S. 1-138.

**3. Same—Counterclaims in tort arising from contractual relationship may
be asserted in plaintiff's action in tort arising upon the same contract.**

Plaintiff alleged that he was a distributor of defendant corporation's
goods under contract, that defendant corporation and certain of its named
employees entered a conspiracy to injure plaintiff in his reputation and
interfere with plaintiff's business under the contract, and that pursuant
thereto false statements were made to plaintiff's customers in regard to
the business, and plaintiff's customers coerced into signing new contracts
with the corporate defendant, and that plaintiff's employees were harassed
and interfered with, and plaintiff's contract terminated, all in furtherance
of the conspiracy.  Defendant corporation filed counterclaims, alleging:
first, that plaintiff wrongfully interfered with the contractual relationship
between the corporate defendant and its retail customers, thus diverting
from the corporate defendant to another oil company said established
business; second, that plaintiff wrongfully and carelessly removed equip-
ment owned by the corporate defendant from the premises of its customers,
whereby it was damaged; and third, that plaintiff wrongfully converted
to its own use certain underground storage tanks belonging to the corpo-
rate defendant.  *Held:* While plaintiff's action is in tort, the respective

rights and obligations of plaintiff and the corporate defendant in regard to the action and counterclaims arise from and are determined by the contractual relationship subsisting between them, and therefore, the counterclaims were permissible under G.S. 1-137.

**4. Conspiracy § 1—**

In order to recover in a civil action for conspiracy it is required that there be some overt act committed by one or more of the alleged conspirators pursuant to the common design.

**5. Same—**

The civil liability of conspirators is joint and several, and an action for civil conspiracy may be maintained against any one or all of the alleged conspirators.

**6. Pleadings § 10—**

When a cause of action is brought against several defendants jointly, but the liability of the defendants to plaintiff is both joint and several, any one of the defendants may allege a counterclaim, otherwise permissible, solely in its favor, since if such defendant recovers on any or all of its counterclaims, a several judgment between it and plaintiff may be entered, adjudicating their rights and liabilities *inter se.*   G.S. 1-222.

APPEAL by defendant Gulf Oil Corporation from *Craven, Special Judge,* January-February Term, 1957, of LEE.

This appeal is from a judgment sustaining plaintiff's demurrer *ore tenus* to three causes of action alleged as counterclaims by defendant Gulf Oil Corporation, hereinafter called Gulf. The individual defendants, who answered but did not counterclaim, are not parties to this appeal.

The complaint and said counterclaims are the pleadings to be considered.

These facts, alleged by plaintiff, are not in dispute, viz.: On or about 30 June, 1930, plaintiff and Gulf Refining Company, then a subsidiary of Gulf, entered into an agreement for the distribution by plaintiff of Gulf's petroleum products in the Sanford area. Under this and subsequent contracts between plaintiff and Gulf's said subsidiary, and later between plaintiff and Gulf, plaintiff continued as the distributor of Gulf's products through 30 April, 1955. Exhibit A, attached to and made a part of the complaint, is a copy of the last contract between plaintiff and Gulf. Dated 1 May, 1947, it was continued in effect to and including 30 April, 1955. Therein Gulf is designated "Consignor" and plaintiff is designated "Consignee." As to duration, it provides: "This agreement is for a period of one year from the date hereof but shall be automatically extended and renewed for successive periods of one year each, unless one of the parties hereto notifies the other in writing at least thirty (30) days in advance of the end of any such year

that it does not desire to renew or extend the same." By letter dated 22 March, 1955, Gulf notified plaintiff that it would not extend or renew said contract beyond 30 April, 1955. While said contract subsisted, plaintiff, as Gulf's lessee, was in possession of Gulf's bulk plant in Sanford.

The defendants are Gulf, Draughn, formerly plaintiff's employee, and Hicks, Martin and Johnston, employees and agents of Gulf.

To avoid repetition, it should be understood that plaintiff alleged repeatedly, in respect of conspiracy and of overt acts, that defendants' alleged wrongful conduct was "wilful," "wicked," "malicious," "fraudulent" and "corrupt."

Prior to 22 March, 1955, so plaintiff alleged, defendants entered into a conspiracy "to destroy the plaintiff's reputation and to interfere with and destroy the plaintiff's business"; and all alleged acts and statements, before and after 22 March, 1955, were pursuant to and in furtherance of said conspiracy.

The overt acts, so plaintiff alleged, included the following: Defendants undertook to persuade plaintiff's dealers to sever and discontinue their contractual relations with plaintiff by false and defamatory statements. These statements, *inter alia,* were (1) that plaintiff was going out of business; (2) that he was voluntarily discontinuing the distribution of Gulf's products in order to handle the products of another oil company; (3) that he was installing the pumps of another oil company in place of Gulf's pumps; (4) that he was in bad health and otherwise unable properly to manage his business; and (5) that plaintiff was stealing certain of Gulf's equipment. Also, the defendants, by special inducements, *e.g.,* increased commissions, and by intimidation, *e.g.,* threatening to remove the underground tanks at their places of business, coerced plaintiff's dealers into signing new contracts with Gulf. Also, the defendants, by special inducements, *e.g.,* increased salaries, endeavored to get plaintiff's employees to quit plaintiff and work for Gulf, and in general harassed, interfered with and demoralized plaintiff's employees and business. Except for two instances, one on 22 March, 1955, involving alleged statements by Johnston to a farm customer of plaintiff, and the other on 21 March, 1955, involving alleged statements by Hicks and Martin to a service station dealer of plaintiff, the said allegations are indefinite as to the time, place and individuals involved. The termination by Gulf of said contract of 1 May, 1947, is alleged as an act done in furtherance of the alleged conspiracy.

Plaintiff alleged that he sustained compensatory damages of $200,-000.00 and punitive damages of $50,000.00 on account of loss of time, interference with and demoralization of his employees and customers, and "loss of customers, trade and business."

Plaintiff alleged further that he sustained separate and additional compensatory damages of $300,000.00, and separate and additional punitive damages of $100,000.00, on account of the humiliation, shock, etc., and injury to his "business name, fame, credit and reputation," caused by defendants' alleged slanderous statements.

The three causes of action alleged by Gulf include the allegations set out below.

*First cause of action:* The contract of 1 May, 1947, and plaintiff's lease of Gulf's bulk plant, were terminated by both plaintiff and Gulf effective at midnight 30 April, 1955. As contemplated by the contract of 1 May, 1947, and with plaintiff's knowledge, Gulf had contracts with operators of service stations and consumers, providing, *inter alia,* "for the purchase by said customers of their requirements of Gulf petroleum products from this defendant, and providing also for the loan and installation by this defendant of Gulf equipment, including pumps, tanks, air compressors, etc., at the places of business or on the premises of said customers, to facilitate their handling, resale and use of Gulf petroleum products." Plaintiff, while Gulf's distributor, and notwithstanding denials of such intention, secretly planned and schemed to discontinue his relationship with Gulf and to enter into an agreement with another oil company for the distribution of its products, and in furtherance of his said plan and scheme, wrongfully induced Gulf's said customers to cancel and fail to perform their said contracts, thus diverting from Gulf to another oil company Gulf's said established business with its said customers. By reason of plaintiff's wrongful interference with the contractual relations between Gulf and its said customers, Gulf was damaged by loss of revenue and of profits to the extent of $75,000.00.

*Second cause of action:* In March and April, 1955, while Gulf's distributor, plaintiff wrongfully removed equipment owned by Gulf from the premises of Gulf's customers, installing other equipment in its place. After first disclaiming any knowledge thereof, plaintiff delivered to Gulf said equipment, consisting of "gasoline dispensing pumps, electric wiring, meters, neon signs, steel plates, computors, etc." Gulf's said equipment was so removed by plaintiff in a careless and reckless manner whereby Gulf has been damaged to the extent of $3,439.90.

*Third cause of action:* While plaintiff was Gulf's distributor, Gulf loaned and installed on service station premises for the distribution of its products certain underground storage tanks, lifts, and other property. Notwithstanding the termination of plaintiff's said contract with Gulf, plaintiff "has been and still is, directly or indirectly, wrongfully using, and has converted to his own use, thirteen 1,000-gallon underground storage tanks, fifty-four 500-gallon underground storage tanks, ten 280-gallon underground storage tanks, two lifts, and other miscel-

laneous property," whereby Gulf has been damaged to the extent of $10,290.00.

Gulf's sole assignment of error is to the judgment referred to above.

*Pittman & Staton, Lowry M. Betts, Douglass & McMillan, P. H. Wilson, and H. F. Seawell, Jr., for plaintiff, appellee.*

*Gavin, Jackson & Gavin, Basil M. Watkins, and Smith, Leach, Anderson & Dorsett for defendant Gulf Oil Corporation, appellant.*

BOBBITT, J. The record does not disclose the ground on which plaintiff's demurrer *ore tenus* was interposed or sustained. So far as appears, it was directed to Gulf's three causes of action, collectively. The question debated here, and presumably in the court below, is whether Gulf's causes of action are permissible counterclaims under G.S. 1-137. This opinion deals solely with that question.

Under G.S. 1-137, "A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action," in favor of a defendant and against a plaintiff "between whom a several judgment might be had in the action," is a permissible counterclaim.

In determining whether Gulf's alleged counterclaims are permissible, we must accept as true the facts alleged therein.

Whether Gulf wrongfully terminated the contract of 1 May, 1947, as an overt act in furtherance of the alleged conspiracy, as asserted by plaintiff, or whether plaintiff terminated said contract and also his lease of Gulf's bulk plant in furtherance of a scheme to discontinue his relationship with Gulf and to engage in business as a distributor for another oil company, as asserted by Gulf, this is clear: Determination of the respective rights and obligations of plaintiff and Gulf (1) with reference to the termination of their contract of 1 May, 1947, (2) with reference to their relationships with dealers in and customers for Gulf products, and (3) with reference to installations made to facilitate the handling of Gulf's products, while their contract was in effect and also upon termination thereof, *lies at the center of this controversy.*

While plaintiff's action is in tort, the respective rights and obligations of plaintiff and Gulf arise from and are determined by the contractual relationship subsisting between them. *Pinnix v. Toomey,* 242 N.C. 358, 87 S.E. 2d 893. The defamatory statements and the acts of interference with plaintiff's business, dealers and employees, alleged by plaintiff, and the wrongful acts of plaintiff alleged in Gulf's counterclaims, all must be considered in relation to the respective rights and obligations of the parties under said contract of 1 May, 1947.

As stated by *Stacy, J.* (later *C. J.*), in *Construction Co. v. Ice Co.,* 190 N.C. 580, 130 S.E. 165: "It will be observed that the parties bottom

their respective causes of action on the same contract, each alleging a breach by the other. The two causes of action, therefore, arise out of the same subject-matter; and a recovery by one would necessarily be a bar or offset, *pro tanto* at least, to a recovery by the other." *Lumber Co. v. Wilson*, 222 N.C. 87, 21 S.E. 2d 893; *Garrett v. Kendrick*, 201 N.C. 388, 160 S.E. 349; *Savage v. McGlawhorn*, 199 N.C. 427, 154 S.E. 673; *Bell v. Machine Co.*, 150 N.C. 111, 63 S.E. 680. The cases cited present factual situations relating to a single contract, each party alleging a breach thereof by the other. Moreover, they relate to pleas in abatement and support the view that if Gulf had not alleged its said counterclaims herein it would be precluded from doing so in an independent action. Here, we are concerned only with whether Gulf's alleged causes of action are *permissible* counterclaims.

If it be conceded that certain of the alleged defamatory statements would constitute a cause of action, apart from the contractual relationship between plaintiff and Gulf, the answer is that in such case plaintiff has compounded in his complaint, although not separately stated, at least two alleged causes of action. *Heath v. Kirkman*, 240 N.C. 303, 82 S.E. 2d 104. It appears plainly that, independent of alleged defamatory statements, plaintiff has included in his complaint an alleged cause of action for wrongful interference with and damage to his business by defendants' alleged violations of plaintiff's rights under his contract with Gulf. The intermixture of these causes of action makes it somewhat more difficult to deal with the questions presented. But if Gulf's causes of action are permissible counterclaims to *any* cause of action alleged by plaintiff, it makes no difference that plaintiff did not see fit to allege such cause of action separately. G.S. 1-138.

The conclusion reached thus far is that, if plaintiff's action were against Gulf alone for the alleged wrongful conduct of its agents, Gulf's counterclaims are permissible. There remains for consideration the effect, if any, of plaintiff's allegations as to conspiracy and his joinder of the individual defendants.

Whether the allegations of the complaint are sufficient to support a recovery on account of the alleged wrongful acts of Gulf if plaintiff should fail to establish the alleged conspiracy, is a question we need not decide. See *Manley v. News Co.*, 241 N.C. 455, 85 S.E. 2d 672. Whether restricted thereto, plaintiff does allege conspiracy and overt acts in furtherance thereof.

"Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pur-

suance thereof—the damage—not the conspiracy or the combination. The combination may be of no consequence except as bearing upon rules of evidence or the persons liable." 11 Am. Jur. 577, Conspiracy sec. 45. To create civil liability for conspiracy there must have been an overt act committed by one or more of the conspirators pursuant to the scheme and in furtherance of the objective. 15 C.J.S. 1000, Conspiracy sec. 5. These principles have been recognized and applied by this Court. *Muse v. Morrison,* 234 N.C. 195, 66 S.E. 2d 783; *Holt v. Holt,* 232 N.C. 497, 61 S.E. 2d 448.

"It would seem that, as to a conspirator who committed no overt act resulting in damage, the basis of his liability for the conduct of his co-conspirators bears close resemblance to the basis of liability of a principal under the doctrine of *respondeat superior* for the torts of his agent." *Reid v. Holden,* 242 N.C. 408, 415, 88 S.E. 2d 125.

Thus, a plaintiff's right to recover must be based on overt acts. Whether such overt acts, if established, were committed in furtherance of an alleged conspiracy entered into between two or more persons determines *from whom* the plaintiff may recover, *i.e.,* the identity of the parties who are legally liable for damages resulting from such overt acts. So considered, the alleged overt acts, rather than the existence or nonexistence of the conspiracy, constitutes the foundation of plaintiff's alleged cause of action.

"All conspirators may be joined as parties defendant in an action for the damages caused by their wrongful act, although it is not necessary that all be joined; an action may be maintained against only one." 11 Am. Jur., Conspiracy sec. 54. The liability of Gulf is to be determined on the same basis as if it were the sole defendant, either originally or by reason of voluntary nonsuit as to the individual defendants.

Moreover, the liability of conspirators is joint and several. *Muse v. Morrison, supra;* 11 Am. Jur., Conspiracy sec. 45; 15 C.J.S., Conspiracy sec. 18. Indeed, plaintiff's prayer is for "judgment against the defendants with joint and several liability" in the amounts set forth above.

This question arises: Where the action is joint in form, is it permissible for one of several defendants to allege a counterclaim solely in its favor? The answer is "Yes," if the liability of such defendant, in respect of plaintiff's claim, is several, or joint and several.

Decisions in other jurisdictions are collected in two annotations: 10 A.L.R. 1252; 81 A.L.R. 781.

In 80 C.J.S., Set-Off and Counterclaim sec. 51f, this statement appears: ". . . as a general rule, where action is brought against two or more defendants on a joint and several demand, or on a several demand, a set-off or counterclaim consisting of a demand in favor of one of them against plaintiff may, if otherwise without objection, be inter-

posed; and it is immaterial in such case that the action is joint in form, . . ."

In 47 Am. Jur., Setoff and Counterclaim sec. 56, this statement appears: "In many jurisdictions, the availability as a setoff or counterclaim of a demand against the plaintiff, in an action at law, in favor of less than the whole number of defendants depends on whether the defendant or defendants having such claim are severally liable to the plaintiff, or are liable jointly with the other defendant or defendants to the suit. If a several judgment may be entered against such defendant or defendants, then, in these jurisdictions, a claim in his or their favor against the plaintiff or plaintiffs is available as a setoff or counterclaim. This rule has been made statutory in a number of states. A common form of statute provides that a counterclaim must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment may be had in the action." It is noted that G.S. 1-137 so provides.

If the counterclaim is otherwise permissible, and the liability of the defendant who asserts it is several, or joint and several, the mere form of plaintiff's action should not and does not operate to deprive such defendant of the statutory right to interpose such counterclaim. We approve the rule stated in the foregoing quotations from Corpus Juris Secundum and American Jurisprudence. It appears that this rule was applied in *Shell v. Aiken,* 155 N.C. 212, 71 S.E. 230, where, in plaintiff's action against two defendants, jointly and severally liable on a promissory note, a counterclaim in favor of one of the defendants was upheld.

If Gulf is liable as a conspirator for wrongful acts in furtherance of the alleged conspiracy, its liability is several as well as joint, that is, Gulf is liable *to plaintiff* for the full amount of plaintiff's recovery. If Gulf prevails on all or any of its counterclaims, a several judgment as between plaintiff and Gulf, may be entered, adjudicating their rights and liabilities *inter se.* G.S. 1-222.

For the reasons stated, we conclude that the causes of action alleged by Gulf are permissible counterclaims; and that the judgment from which this appeal was taken must be reversed.

This disposition of the appeal makes unnecessary a consideration of appellant's contentions: (1) that plaintiff, having replied thereto, could not thereafter challenge by demurrer *ore tenus* Gulf's right to allege said causes of action as counterclaims; and (2) that Judge Craven had no jurisdiction, by reason of a prior ruling by Judge Seawell on plaintiff's motion to strike, to pass upon the question presented by plaintiff's demurrer *ore tenus.*

Reversed.