**BAILEY–ALLEN CO., INC.,**
**Plaintiff and Appellee,**

v.

Stanley M. KURZET, an individual; Stanley M. Kurzet and Anne L. Kurzet, as trustees for the Kurzet Family Trust; and the Kurzet Family Trust, Defendants and Appellants.

No. 960839–CA.

Court of Appeals of Utah.

Sept. 18, 1997.

Spencer E. Austin and William J. Evans, Parsons, Behle & Latimer, Salt Lake City, for Defendants and Appellants.

Bruce J. Nelson and Russell G. Workman, Allen, Nelson, Rasmussen & Christensen, Salt Lake City, for Plaintiff and Appellee.

Before DAVIS, P.J., and WILKINS and BENCH, JJ.

## OPINION

DAVIS, Presiding Judge:

This case is before us for the second time on appeal. *See Bailey–Allen Co., Inc. v. Kurzet,* 876 P.2d 421 (Utah Ct.App.1994) (*Bailey–Allen I*). This time around, the Kurzets challenge the trial court's Amended Findings of Fact (Amended Findings) and Conclusions of Law (Amended Conclusions) entered pursuant to remand. In addition, the Kurzets raise a postjudgment interest question regarding the trial court's original judgment and challenge the trial court's failure to impose sanctions on Bailey–Allen.

## BACKGROUND

The factual history of this case is outlined in *Bailey–Allen I.* Accordingly, "we add only those facts and events necessary to review the trial court's actions on remand pursuant to our directions in [*Bailey–Allen I*]." *Willey v. Willey,* 914 P.2d 1149, 1150 (Utah Ct. App.), *cert. granted,* 925 P.2d 963 (Utah 1996).

In *Bailey–Allen I,* this court reversed the trial court's quantum meruit/unjust enrichment award in favor of Bailey–Allen and remanded "for analysis and findings under the standard articulated in [*Davies v. Olson,* 746 P.2d 264 (Utah Ct.App.1987)]." 876 P.2d at 426. We also reversed the trial

court's prejudgment interest award; reversed and remanded the trial court's postjudgment interest award and "direct[ed] the trial court to award postjudgment interest, if a judgment [wa]s awarded, only from the date the new judgment on remand [wa]s entered;" and reversed and remanded "for the entry of attorney fees [to the Kurzets] under the Mechanics' Lien Statute and for consideration of whether [fees] should be awarded under the Bond Statute." *Id.* at 429.

On remand, the trial court awarded the Kurzets $1920 in attorney fees and $17.50 in costs, having determined that such amounts were reasonably incurred "in bringing their motion for partial summary judgment on [Bailey–Allen's] causes of action based on the Mechanic[s'] Lien Statute and the Construction Bond Statute." The trial court also awarded "postjudgment interest on said award of attorney fees and costs ... from and after the date of entry of this judgment[, January 23, 1995]." Thereafter, the Kurzets filed a Motion for Entry of Judgment Nunc Pro Tunc "on their judgment against [Bailey–Allen] in the amount of $4,359.00 in damages together with interest thereon" based on the trial court's judgment entered October 6, 1992, partially offsetting the judgment in favor of Bailey–Allen. Bailey–Allen filed a motion opposing the Kurzets' nunc pro tunc motion.

Bailey–Allen also filed a motion seeking to set aside the trial court's prior, unappealed order dismissing Bailey–Allen's mechanics' lien cause of action and to set aside the January 1995 judgment for attorney fees in favor of the Kurzets. In addition, Bailey–Allen filed a Motion for Entry of Additional and Amended Findings of Fact, Conclusions of Law, and Judgment pursuant to this court's 1994 decision. *See Bailey–Allen I,* 876 P.2d at 426. In response to Bailey–Allen's Motion to Set Aside, the Kurzets filed a motion for sanctions under Rule 11 of the Utah Rules of Civil Procedure alleging Bailey–Allen's Motion to Set Aside was "frivolous and unwarranted" and seeking "attorneys [sic] fees and costs incurred in opposing

said motion and in bringing this Motion for Sanctions Under Rule 11." Bailey–Allen later withdrew its Motion to Set Aside.

Pursuant to a Minute Entry, the trial court granted Bailey–Allen's motion for additional findings, declared moot the Kurzets' nunc pro tunc motion, denied the Kurzets' motion for Rule 11 sanctions, ordered the previous award of attorney fees be included in the amended judgment, and ordered Bailey–Allen to prepare the amended findings, conclusions, and judgment. Thereafter, the trial court signed the Amended Findings of Fact and Conclusions of Law, Amended Judgment, and Order Denying Motions for Sanctions and for Entry of Judgment Nunc Pro Tunc. The Kurzets filed a notice of appeal, whereupon the parties filed a Joint Motion for an Order Authorizing Payment of Amended Judgment Into Court and Staying Execution of Amended Judgment. The trial court granted the parties' joint motion.

The Kurzets raise five issues on appeal: [1] (1) whether the trial court's Amended Findings are contrary to this court's prior mandate to enter consistent, detailed findings, and whether the trial court's Amended Findings are supported by the record evidence; (2) whether the trial court's Amended Findings and its Amended Conclusions satisfy the elements necessary for recovery in quasi-contract; (3) whether the trial court erred in determining that the Kurzets were unjustly enriched by Bailey–Allen's renegotiation of lumber prices; (4) whether the trial court erred in denying the Kurzets' Motion for Entry of Judgment Nunc Pro Tunc; and (5) whether the trial court erred by not awarding the Kurzets sanctions for Bailey–Allen's alleged violation of Rule 11 of the Utah Rules of Civil Procedure.

In addition, citing *Willey,* 914 P.2d 1149, the Kurzets invite this court to correct any errors made on remand rather than again sending this case before the trial court. In *Willey,* this court noted that an appellate court may take " 'corrective action in the interest of justice' " where the trial court's "resolution of the issues raised in [the appel-

---

1. The Kurzets' appellate brief enumerates six issues. However, because two of the issues are closely related challenges to the trial court's Amended Findings, we address them as one.

late court's] remand order" is incomplete. *Id.* at 1151 (citation omitted).

## ANALYSIS

 Initially, we note that " 'pronouncements of an appellate court on legal issues ... become the law of the case and must be followed in subsequent proceedings[;] ... [thus,] the lower court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.' " *Slattery v. Covey & Co., Inc.*, 909 P.2d 925, 928 (Utah Ct.App.1995) (quoting *Thurston v. Box Elder County*, 892 P.2d 1034, 1037–38 (Utah 1995) (citations omitted)). "Thus, it is only when issues are left open by an appellate decision that the trial court has discretion to deal with those issues as it sees fit, including allowing supplemental filings or proceedings." *Id.*

### 1. Amended Findings

The Kurzets first contend that the trial court's Amended Findings are contrary to this Court's remand in *Bailey–Allen I* because the trial court did not "supersede its Original Findings and Conclusions which were already inconsistent" and "attempt[ed] to find evidence supporting ... an award to Bailey–Allen where none exists." The Kurzets assert:

> When Bailey–Allen submitted its proposed Amended Findings and Conclusions it proposed that they "supersede the original Findings and Conclusions." ... The trial court, however, was uncomfortable abandoning the Original Findings, and ultimately ruled that the Original Findings must stand. The operative findings of fact on this appeal, therefore, are the Original Findings *and* the Amended Findings. The Original Findings were ... internally inconsistent. The Amended Findings are even more inadequate because they not

only preserve the inconsistencies, but they directly contradict the evidence.

At the hearing on the Kurzets' objections to Bailey–Allen's proposed findings, the trial court noted that the Kurzets took "issue with the statement made by [Bailey–Allen that the Amended Findings] 'supersede the original findings.' " In response, Bailey–Allen's counsel noted that the Amended Findings "were drafted with the view that they were superseding. I haven't gone back now and compared to see whether some of the new findings you made would conflict with the old ones you made. I suspect that's what [the Kurzets'] counsel's problem may be." The Kurzets' counsel then argued the exact opposite position the Kurzets now take on appeal, stating, "the Court of Appeals ... said that they remanded [the case] to 'clarify.' So perhaps I could suggest that word, 'clarify,' or 'clarified' the findings of fact and conclusions of law." Based on the arguments of counsel, the trial court changed the "supersede" language within the proposed Amended Findings to "clarified."

 The Kurzets are not at liberty to argue one position below and then take the opposite position on appeal. *See First Equity Corp. v. Utah State Univ.*, 544 P.2d 887, 892 n. 5 (Utah 1975). In addition, the Kurzets mistakenly conclude that "the Original Findings *and* the Amended Findings" must both be considered on appeal. The trial court's Amended Findings incorporate, practically verbatim, the Original Findings and add fifteen new findings. Clearly the Amended Findings were intended to replace the Original Findings. *Cf. Waters v. Yockey*, 144 Tex. 592, 192 S.W.2d 769 (1946).[2] Notwithstanding, to the extent that the Amended Findings and the Original Findings are inconsistent, we have extensively reviewed the record and have determined that the Amended Findings more accurately reflect the record evidence. Thus, our focus is whether the trial court's Amended Findings are detailed

---

2. In *Waters v. Yockey*, 144 Tex. 592, 192 S.W.2d 769 (1946), the Texas Supreme Court concluded: The fact that the trial court filed an entirely new set [of] findings covering the whole case, which were complete in themselves and inconsistent with the findings previously filed, shows

clearly, we think, that the trial judge intended that the latter set of findings should serve as a substitute for the first set of findings, and should control in the disposition of the case. *Id.* at 770.

and consistent as mandated by *Bailey–Allen I.*

Without question, the trial court's factual findings are more detailed as amended and clearly satisfy the call for particularity of *Bailey–Allen I.* However, the Kurzets contend that the findings remain inconsistent and are unsupported by the record. Specifically, the Kurzets challenge findings numbered fourteen through seventeen, nineteen, and twenty.

 "To overturn a trial court's finding of fact, 'an appellant must first marshal all the evidence supporting the findings and then demonstrate that, even if viewed in the light most favorable to the trial court, the evidence is legally insufficient to support the findings.'" *Coalville City v. Lundgren,* 930 P.2d 1206, 1209 (Utah Ct.App.) (quoting *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989)), *cert. denied,* 939 P.2d 683 (Utah 1997). "Findings of fact will not be set aside unless they are against the clear weight of the evidence and clearly erroneous with due consideration given to the trial court to judge the credibility of witnesses." *Id.* at 1209–10; *accord* Utah R. Civ. P. 52(a).

*a) Amended Finding Number Fourteen*

 Amended finding number fourteen provides:

> The Court finds that during the three month period that the Contract was in effect, Michael Kent of [Bailey–Allen] was on the construction site approximately thirty (30) hours per week. In addition, Mr. Richard Allen of [Bailey–Allen] visited the construction site practically every day

for some period of time, by his own testimony.

The Kurzets do not take issue with finding number fourteen as it relates to Michael Kent but instead challenge the finding that Richard Allen was present on the construction site "practically every day." During cross-examination, Allen testified as follows:

> Q Now speaking for you personally, as I understand it, you and [Michael Kent] kind of split time being at the job; is that right?
>
> A Mike spent more time on the job tha[n] I did.
>
> Q For you yourself, what type of time did you spend on the job in terms say of day by day?
>
> A It varied.
>
> Q How did it vary?
>
> A Some days I spent ten hours on the job, some days I would be there an hour or two.
>
> Q And this was weekly, right?
>
> A Yes.
>
> Q Some days you missed?
>
> A Yes.
>
> Q That was because you had what, other jobs going on?
>
> A Yes, Mike would have been there.

Although the testimony of three other witnesses, including Mr. Kurzet, places Allen on the job site with less frequency, our job is not to judge the credibility of the witnesses. *See Bruner v. Carver,* 920 P.2d 1153, 1158 (Utah 1996). Having reviewed the record, we cannot say that the trial court's finding is clearly erroneous.[3]

---

**3.** The Kurzets also contend that the trial court's Original Findings and Conclusions more accurately reflect the record testimony. The trial court's Original Findings and Conclusions provided in relevant part: "The Court concludes that [the Kurzets] were justified in terminating [Bailey–Allen's] services because [Bailey–Allen] spent very few hours on the job site and did not give the construction project the attention that it required under the contract."

Even assuming that Allen spent "very few hours on the job site" in light of Mr. Kurzet's articulated concerns over experiences with previous general contractors, the record clearly indicates that Michael Kent of Bailey–Allen was on

the site regularly. The Contract between Bailey–Allen and the Kurzets, which was drafted by Mr. Kurzet, states in part: "This Agreement covers all of the undertakings existing between BAILEY-ALLEN (Contractor) and STANLEY KURZET (Owner) for the construction of a residence." Nowhere does the contract specifically require Allen individually to perform any of the items listed in the contract. Instead, all references are to "Contractor," which denotes Bailey–Allen as a corporate entity. Therefore, the Kurzets oft-repeated distinction that Michael Kent, rather than Richard Allen, was responsible for much of the work completed by Bailey–Allen is irrelevant.

### b) Amended Finding Number Fifteen

Amended finding number fifteen provides: "The Court finds that Mr. Allen was also available on his mobile phone when not on site and made or received daily calls concerning the job." The Kurzets contend that Allen "did not make or receive daily calls concerning the job." In so doing, the Kurzets focus solely on Allen's availability to *receive* calls and cite Allen's testimony that he received two calls per week from the framing subcontractor. The Kurzets ignore the record evidence of phone calls Allen received from Mr. Kurzet, as well as numerous phone calls Allen made "concerning the job." Because the Kurzets fail to marshal the evidence in favor of finding number fifteen, we do not address this challenge. *See State v. Mincy*, 838 P.2d 648, 652 n. 1 (Utah.Ct.App. 1992) ("We decline to address this issue because defendant has failed to marshal the evidence."); *cf. State v. Ortiz*, 782 P.2d 959, 962 (Utah.Ct.App.1989) ("We have consistently held that if counsel on appeal does not provide citations to the record, we need not reach the merits of his or her substantive claims.").

### c) Amended Finding Number Sixteen

■ Amended finding number sixteen provides: "The Court finds that Mr. Allen also spent considerable time at his home in the evening making calls, setting up appointments and contacting other contractors in connection with the job." The Kurzets contend that this finding is in error because the record evidence illustrates that Kent, not Allen, made telephone calls in the evening. Our review of the record produced ample evidence that Allen scheduled appointments with architects, building inspectors, and several subcontractors. Whether these appointments were scheduled "in the evening" and whether they were scheduled by Allen or Kent is of no import.

Accepting the Kurzets' invitation to "take corrective action," we amend finding number sixteen as follows: The Court finds that M̶r̶. *Bailey*-Allen also spent considerable time a̶t̶ h̶i̶s̶ h̶o̶m̶e̶ i̶n̶ t̶h̶e̶ e̶v̶e̶n̶i̶n̶g̶ making calls, setting up appointments and contacting other contractors in connection with the job.

### d) Amended Finding Number Seventeen

■ Amended finding number seventeen provides:

The Court finds that during the three month period that the Contract was in effect, [Bailey–Allen] performed general contractor services, including the hiring of subcontractors, overseeing the work of subcontractors, getting bids on retaining walls, windows, cabinets and other items, meeting with people, including building inspectors, and generally coordinating the work on the job.

Here the Kurzets marshal much of the evidence supporting each service listed in finding number seventeen and, thereafter, cite conflicting testimony suggesting that Mr. Kurzet and Andrew Parker, the framing subcontractor, were "generally coordinating the work on the job." Once again, though citing testimony that conflicts with the trial court's finding, the Kurzets do not show that, when viewed in a light most favorable to the trial court, finding number seventeen is against the clear weight of the evidence. *See Bruner*, 920 P.2d at 1158 ("Trial courts are accorded great discretion in determining factual matters. They are in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole.... '[T]he factfinder is free to weigh the conflicting evidence presented and to draw its own conclusions.'" (Citations omitted)). Accordingly, we reject the Kurzets' challenge to finding number seventeen.

### e) Amended Finding Number Nineteen

■ Amended finding number nineteen provides:

The Court finds that Defendant Stanley Kurzet was regularly on the job site, often as much as six (6) hours a day. He personally observed the progress on the home. As a result, [the Kurzets] were aware of the progress of the home while [Bailey–Allen] was the general contractor and w[ere] aware of the benefit [the Kurzets] received as a result of [Bailey–Allen]'s services.

The Kurzets dispute the last sentence in this finding. During the three months that Bailey–Allen worked for the Kurzets, the Kurzet home progressed from a concrete foundation slab to a framed, three-story structure with masonry chimneys. The parties do not dispute that Mr. Kurzet was regularly at the construction site and that he knew of the progress that occurred while Bailey–Allen was employed. However, based on the testimony of Mr. Kurzet, the Kurzets contend that the framing subcontractor was responsible for most of the work that was completed on the house while Bailey–Allen was employed.[4]

In light of the ample testimony supporting findings fourteen through seventeen which detail the services provided by Bailey–Allen, and because Mr. Kurzet was regularly at the job site, we cannot say that the trial court clearly erred in determining that Mr. Kurzet was aware of the benefit received during Bailey–Allen's tenure.

### f) Amended Finding Number Twenty

■ Amended finding number twenty provides:

The Court finds that at no time during the three month period in which the Contract was in effect did [the Kurzets] express any dissatisfaction with the work or progress on the job. On at least one occasion Stanley Kurzet expressed to [Bailey–Allen] that he was satisfied with the way the work was going. [The Kurzets] did not attempt to stop [Bailey–Allen] from completing the Contract until ... Stanley Kurzet terminated the same in connection [with] the insurance matter.

The Kurzets challenge the first sentence of this finding. Having reviewed the record, we agree that the sentence is clearly erroneous.

On direct examination Allen testified as follows:

Q ... Did Mr. Kurzet ever express dissatisfaction to you of the job that was being performed in general?

A Not in general.

Q Did he occasionally—or, did he ever mention to you dissatisfaction with any faction of the job that was being done?

A Yes, I believe he noted it in his log or in a memorandum.

Bailey–Allen employee Michael Kent added:

Q Did Mr. Kurzet ever express satisfaction generally with the way things were being handled prior to October 2nd?

A Not generally.

Q Did he ever express concerns about an item or two that maybe wasn't going the way he wanted it to?

A Oh, yes.

. . . .

Yes, he would tell you verbally, and if he were more concerned he would give it in writing.

Clearly, by Bailey–Allen's own admission, there were times when Mr. Kurzet expressed dissatisfaction with the progress on the construction project. However, the last two sentences of finding number twenty are supported by the evidence.

Kurzet's log book repeatedly expressed satisfaction with the way the work was progressing. Statements like "good progress on framing," "things continue to go well," and "walls going up like fury" show Mr. Kurzet's satisfaction. Indeed, before leaving town on

---

**4.** The Contract between the parties provides, inter alia: "The Owner's review authority notwithstanding, the Contractor is fully responsible to the Owner for the performance of subcontractors. Accordingly, costs occasioned by the failure of a subcontractor to perform shall not be assessable to Owner." By this language, assuming the veracity of Mr. Kurzet's testimony that the framing subcontractor performed most of the work while Bailey–Allen was employed, Bailey–Allen is nonetheless deemed "fully responsible" for that work. Appropriately, the trial court's Amended Conclusions include the following:

The Court concludes that the parties intended under the Contract that [Bailey–Allen] would be responsible for the actions of subcontractors on the job and responsible to [the Kurzets] for any mistakes made by such subcontractors. Conversely, the Court concludes that the parties also intended that [Bailey–Allen] should also be attributed with the benefits of any cumulative work done by subcontractors on the project.

September 26th, Mr. Kurzet wrote that he had "a warm feeling that things are going okay." Mr. Kurzet returned to town late on October 1st and fired Bailey–Allen on October 2nd.

In light of our review of the record, we amend[5] finding number twenty as follows:

The Court finds that at no time during the three month period in which the Contract was in effect did Defendants express any *serious* dissatisfaction with the work or progress on the job *which would have caused Bailey–Allen to believe that Mr. Kurzet was considering terminating the Contract.* On ~~at least one~~ *several* occasions Stanley Kurzet expressed to Plaintiff that he was satisfied with the way the work was going. Defendants did not attempt to stop Plaintiff from completing the Contract until *October 2nd, when* Defendant Stanley Kurzet terminated the same in connection *with* the insurance matter.

## 2. Recovery in Quasi–Contract

■ Next, the Kurzets contend that the trial court's Amended Findings and Amended Conclusions do not satisfy the elements necessary for recovery in quasi-contract. We note that we grant no deference when reviewing the trial court's conclusions of law, but instead review them for correctness. *See Pasker, Gould, Ames & Weaver, Inc. v. Morse,* 887 P.2d 872, 875 (Utah Ct.App.1994).

■ "To prove a contract implied in law or unjust enrichment [also known as quasi-contract], the following must be shown: '(1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it.'" *Bailey–Allen I,* 876 P.2d at 425 (quoting *Davies,* 746 P.2d at 269).

■ In *Bailey–Allen I,* this court agreed with the Kurzets' argument that, "at least in theory," the trial court's determination that "10% of the work completed during Bailey–Allen's tenure was not necessarily due to its presence or performance" and did "not satisfy the first element of the *Davies* test be-

cause Bailey–Allen conferred no benefit upon them." *Id.* at 426. The Kurzets claim that "the trial court's Amended Findings do not state that Bailey–Allen conferred any benefit. Assuming it did, there is not substantial evidence to support that proposition." As discussed above, amended findings fourteen through seventeen support the trial court's Amended Conclusions that "[Bailey–Allen]'s services as general contractor conferred a benefit to the [Kurzets;]" that the Kurzets "were aware of the benefit conferred as a result of [Bailey–Allen]'s general contractor services through its actual on-site observation and satisfaction of the work performed[;]" and that "under the circumstances, it would be unjust for the [Kurzets] to retain the benefit without payment for the same."

The Kurzets also contend that the second and third prongs of the *Davies* test have not been satisfied. Both of these challenges are dependent upon the Kurzets' contention that the Amended Findings are not supported by the record. Because of our disposition of the Kurzets' challenges to the Amended Findings, these challenges necessarily fail and we affirm the trial court's conclusion that "on the basis of contract implied in law, quasi-contract or unjust enrichment, [Bailey–Allen] is entitled to recover from the [Kurzets] the value of the benefit conferred upon [the Kurzets], less any damages resulting from [Bailey–Allen]'s breach of the Contract."

## 3. Lumber Negotiations

After the Kurzets and Bailey–Allen had entered into their Contract, Bailey–Allen inventoried the materials left on the job site by the prior general contractor, Mountainland Builders (Mountainland), and negotiated a fair price for the materials. The Kurzets contend that the trial court erred in determining that they had been unjustly enriched by Bailey–Allen's negotiations with Mountainland. Once again, we review the trial court's findings of fact for clear error and its conclusions of law nondeferentially for cor-

---

**5.** *See Willey v. Willey,* 914 P.2d 1149, 1151 (Utah Ct.App.), *cert. granted,* 925 P.2d 963 (Utah 1996).

rectness. *See Pasker, Gould, Ames, & Weaver,* 887 P.2d at 875.

In *Bailey–Allen I,* we instructed:

[I]f on remand the trial court determines that recovery in quantum meruit is appropriate, it ... should also make particularized findings on ... [Bailey–Allen's] ... involvement in negotiating the purchase price of the lumber at issue. We note that the court should make certain that any benefit conferred in negotiating the price of the lumber must be somehow in addition to the benefits Bailey–Allen conferred by virtue of performing its contractual duty to supervise the project.

876 P.2d at 426. In compliance with these instructions, the trial court entered the following Amended Conclusions:

17. Negotiation of the disputed lumber bill left over from [the] prior contractor was not within the scope of the Contract.

18. The Court concludes that with respect to the inventorying and negotiation of a settlement on the disputed prior lumber bill, [Bailey–Allen] conferred a benefit upon the [Kurzets] in the amount of $5,500, which benefit is in addition to the benefit conferred by [Bailey–Allen's] completion of ten percent of the construction. The Court concludes that [the Kurzets] were aware of [Bailey–Allen]'s actions with respect thereto and that it would be unjust to allow [the Kurzets] to retain such benefit without payment of a reasonable fee to [Bailey–Allen] for such benefit. Accordingly, the Court finds that a fee of one-half the savings on the lumber bill, or $2,750, is fair and reasonable under the circumstances. The Court finds this result particularly fair and reasonable inasmuch as the Court has deducted from [Bailey–Allen]'s recovery the cost of extra materials [Bailey–Allen] ordered for the job which were ultimately found to be unnecessary.

The Kurzets raise two challenges to the trial court's resolution of the lumber negotiation issue: a) "[t]he court made no attempt to ascertain the intention of the parties or to interpret the relevant provision of the Contract that might have guided its decision," and b) the trial court's calculation of damages for unjust enrichment "is without any basis in the facts or the law."

### a) Bailey–Allen's Contractual Duty

The Kurzets contend that the trial court failed to interpret the Contract between the parties as one that required Bailey–Allen to seek competitive prices for materials and services. It is the Kurzets' position that when Bailey–Allen and Mountainland negotiated the amount the Kurzets owed for the materials left on the job site, Bailey–Allen was merely fulfilling a contractual obligation.

When interpreting a contract, a court "may first inquire as to whether the contract is integrated." *Hall v. Process Instruments & Control, Inc.,* 866 P.2d 604, 606 (Utah Ct.App.1993), *aff'd,* 890 P.2d 1024 (Utah 1995). " 'Because this is a factual determination, "review by an appellate court is limited." ' " *Id.* (quoting *Webb v. R.O.A. Gen., Inc.,* 804 P.2d 547, 551 (Utah Ct.App. 1991)).

An integrated contract is an agreement where " 'the parties thereto adopt a writing or writings as the final and complete expression of the agreement.' " If a contract is determined to be integrated, the parol evidence rule "excludes evidence of terms in addition to those found in the agreement." "If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement." "Ambiguous" in this context means that the terms of the contract are "capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.' "

*Id.* (citations and footnote omitted). "If the court determines that the contract terms are unambiguous, ' "we interpret them according to their plain and ordinary meaning and extrinsic or parol evidence is generally not admissible to explain the intent of the parties." ' " *Id.* (citations omitted). "Whether contractual language is ambiguous is a question of law, reviewed for correctness." *Id.*

The trial court concluded "that the parties entered into a valid and binding Con-

tract on July 3, 1990 for the construction of [the Kurzets'] residence in Park City, Utah." Nowhere in the trial court's findings or conclusions did the trial court determine that the contract was integrated. Nonetheless,

"[w]here the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression."

*Union Bank v. Swenson,* 707 P.2d 663, 665 (Utah 1985) (quoting Restatement (Second) of Contracts § 209(3) (1981)). Because the parties make no assertion to the contrary and because the record does not suggest otherwise, we conclude that the contract between Bailey–Allen and the Kurzets was a complete and final expression of their agreement.

The operative clause of the contract unambiguously provides:

The Owner will have review authority and right of refusal on subcontracts and material purchases. *The Contractor will obtain competitive bids for services and materials* in sufficient time to permit a review of a maximum of one week duration by Owner and if necessary, select an alternative supplier without impact on schedule or cost. Every effort will be made by the Contractor to locate, solicit, and select suppliers sufficiently in advance of need to prevent the forced acceptance of an uneconomic bid because a delay would be as costly or more costly than the loss arising from the uneconomic bid. All bids will provide sufficient detail to permit an intelligent analysis of the value of such bid. Time and material bids will at minimum state the proposed hourly rates for each category of labor and the percentage of fees and all other costs to be passed on to Owner for labor and material. Both fixed price and T & M bids will adequately identify the materials to be provided as to quantity, type, grade, model and manufacturer as applicable.

(Emphasis added.) The Kurzets contend that "there is no basis in the record to conclude that counting lumber fell outside the contract." The record proves otherwise.

 The parties do not dispute that Mr. Kurzet reproduced verbatim the Mountainland contract, substituting "Bailey–Allen" for "Mountainland Builders," and that it was the reproduced document that Bailey–Allen signed. Nor do the parties dispute that the lumber in question was left on the site by Mountainland. Hence, under the Mountainland contract, Mountainland was responsible for obtaining a competitive bid for the materials. We presume, under the terms of what would have been the Mountainland contract, that Mr. Kurzet had already approved the purchase of the materials, thus explaining the materials having been delivered to the site. Clearly, it was Mountainland that obtained the bid for and bought the materials in question before its termination.

At trial, Allen testified as follows:

Q During the course of your employment, this three months, was there ever a time when you believed you actually saved Mr. Kurzet some construction cost, money he otherwise would not have saved?

A Yes.

Q Tell me what time you're talking about.

A About—it was in the very beginning when we came onto the project. We had a shipment of lumber materials that was on site from [Mountainland]. [Mr. Kurzet] mentioned to me that he was going to pay $28,000 plus for the materials.

I thought that we ought to evaluate what he had first and count it up and see whether or not that's an accurate estimate or accurate bill that he was going to pay.

Subsequently [Michael Kent] and I went through and counted every piece of lumber and had it priced out at a current price, and suggested that he pay, with a discount, $22,500.

Q Do you happen to know how much he ultimately paid for that lumber; did he tell you?

A Yes, he told me he ended up paying $22,500 for it.

Under these facts, the trial court was correct in concluding "that with respect to the inven-

torying and negotiation of a settlement on the disputed prior lumber bill, [Bailey–Allen] conferred a benefit upon the [Kurzets] in the amount of $5,500, which benefit is in addition to the benefit conferred by [Bailey–Allen's] completion of ten percent of the construction."

### b) Calculation of Damages

 The Kurzets also contend that the trial court arbitrarily measured damages for unjust enrichment. As set forth above, the trial court concluded that the Kurzets

were aware of [Bailey–Allen]'s actions with respect [to the lumber negotiations] and that it would be unjust to allow [the Kurzets] to retain such benefit without payment of a reasonable fee to [Bailey–Allen] for such benefit. Accordingly, the Court finds that a fee of one-half the savings on the lumber bill, or $2,750, is fair and reasonable under the circumstances. The Court finds this result particularly fair and reasonable inasmuch as the Court has deducted from [Bailey–Allen's] recovery the cost of extra materials [Bailey–Allen] ordered for the job which were ultimately found to be unnecessary.

As stated in *Davies*, unjust enrichment damages are recoverable when the plaintiff can show: "(1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." 746 P.2d at 269. Under the facts and circumstances of this case, the trial court correctly concluded that Bailey–Allen was entitled to unjust enrichment damages. Yet, the Kurzets claim the amount of the award was arrived at arbitrarily. We disagree. The court carefully considered the parties' testimony on the matter and compared the benefit received by the Kurzets to the services provided by Bailey–Allen. The trial court's conclusion, which gives the Kurzets one half of the amount saved while also compensating Bailey–Allen for its services, was not arbitrarily reached.

### 4. Motion for Entry of Judgment Nunc Pro Tunc

The Kurzets argue that "the judgment in favor of Kurzets that was applied as an offset to the Original Judgment has stood since October 6, 1992, the day the Original Judgment was entered." The amount at issue is the trial court's award of "$4,359 for faulty construction and for over-ordering materials." The Kurzets explain that "[j]udgment was entered applying those amounts as offsets against the [original] $15,500 award to Bailey–Allen for unjust enrichment leaving a net judgment in favor of Bailey–Allen of $11,141." Citing *D'Aston v. Aston*, 844 P.2d 345 (Utah Ct.App.1992), the Kurzets argue that because Bailey–Allen did not appeal the portion of the original judgment in favor of the Kurzets, the trial court erroneously denied the Kurzets' August 1995 nunc pro tunc motion. *See D'Aston*, 844 P.2d at 352 (" '[A]ny portion of a judgment not appealed from continues in effect, regardless of the reversal of other parts of the judgment.' " (Citation omitted.)).

 Initially, we note that the Kurzets' answer to Bailey–Allen's original complaint included a counterclaim for the amounts sought in the Kurzets' nunc pro tunc motion. Some jurisdictions continue to recognize a distinction between offsets, also known as setoffs, and counterclaims. *See, e.g., Rogue River Management Co. v. Shaw*, 243 Or. 54, 411 P.2d 440, 442–43 (1966). In these jurisdictions, a "set-off may be used to offset a plaintiff's claim but not to recover affirmatively ... [while a] 'counterclaim' permits affirmative relief." *Id.*, 411 P.2d at 442–43. In Utah, the distinctions between counterclaims and setoffs have been dissolved. *See Mark VII Fin. Consultants Corp. v. Smedley*, 792 P.2d 130, 133 (Utah Ct.App.1990).

 Whether characterized as an offset or as damages awarded on a counterclaim, we see no merit to the contention that the trial court should have granted the Kurzets' nunc pro tunc motion. It was the Kurzets who appealed the trial court's original judgment in favor of Bailey–Allen, which, by necessary implication, involved the offset awarded to the Kurzets. Hence, we agree with the reasoning of the Ohio Court of

Appeals that "[i]n a situation such as this where adverse claims are made relating to the same or related subject matter, the trial court may make findings in favor of either party but should render only one judgment and that in favor of the party having the greater amount due." *Betz v. Timmons*, 119 Ohio App. 239, 199 N.E.2d 22, 23 (1963); *see also Burns v. Gulf Oil Corp.*, 246 N.C. 266, 98 S.E.2d 339, 342 (1957) (" 'The two causes of action . . . arise out of the same subject-matter, and a recovery by one would necessarily be a bar or offset, *pro tanto* at least, to a recovery by the other.' " (Citation omitted.)). Accordingly, in denying the Kurzets' nunc pro tunc motion, the trial court correctly noted: "I think [the Kurzets are] entitled to that offset, but I would not grant a separate judgment nunc pro tunc where they could receive [payment] without the benefit of the offset." [6]

### 5. Rule 11 Sanctions

Finally, the Kurzets claim that "the trial court erred in failing to award sanctions for Bailey–Allen's violation of Rule 11." *See generally* Utah R. Civ. P. 11. On August 26, 1991, the trial court granted the Kurzets' partial summary judgment motion, dismissing Bailey–Allen's mechanics' lien cause of action. Bailey–Allen then filed a Motion for Reconsideration of the Order Dismissing the Mechanic[s'] Lien Claim, which the court later denied. Bailey–Allen did not seek appellate review of the trial court's denial of their reconsideration motion. *See Ross v. Schackel*, 920 P.2d 1159, 1161 (Utah 1996) (reviewing appellate court jurisdiction over appeal from denial of motion to reconsider); *cf. Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 970 (Utah Ct.App.1989) ("If Schettler believed the trial court erred in denying his first motion to set aside the default judgment, the appropriate remedy was by direct appeal. . . ."). On October 6, 1992, the trial entered its Original Judgment from which the Kurzets appealed. Once again, Bailey–Allen did not appeal the dismissal of its mechanics' lien claim.

On November 13, 1994, the Kurzets filed a motion seeking attorney fees and costs "incurred in prevailing on their Motion for Partial Summary Judgment on [Bailey–Allen's] causes of action under the Mechanic[s'] Lien statute and the Bond statute." Bailey–Allen filed an opposing memorandum. Pursuant to a conference call with Judge Glenn K. Iwasaki, the parties stipulated to a continuance of the Kurzets' motion. During the conference call, Judge Iwasaki requested that the parties contact Judge Homer F. Wilkinson, the original trial judge for the case, to determine if Judge Wilkinson was supposed to hear the motion after it came back from the Court of Appeals. Having determined that the attorney fees motion was not "peculiar and unique to the knowledge of [Judge Wilkinson]," Judge Iwasaki granted the motion, awarding the Kurzets $1937.50. Judge Iwasaki's minute entry noted: "If counsel wants further hearing on the Mechanic[s'] Lien issue, it can go back to Judge Wilkinson."

On August 25, 1995, Bailey–Allen filed a motion to set aside the trial court's 1991 order dismissing Bailey–Allen's mechanics' lien cause of action. In September 1995, the Kurzets responded and requested Rule 11 sanctions. Bailey–Allen withdrew the motion on March 11, 1996. The Kurzets contend that because Bailey–Allen "failed to take the issue on appeal, it had become res judicata," and thus Bailey–Allen's motion for reconsideration was implausible and warranted Rule 11 sanctions.

■■■ "Whether specific conduct amounts to a violation of Rule 11 is a question of law." *Taylor v. Estate of Taylor*, 770 P.2d 163, 171 (Utah Ct.App.1989); *see also Barnard v. Sutliff*, 846 P.2d 1229, 1234 (Utah 1992) ("The trial court's ultimate conclusion that rule 11 was violated . . . [is] reviewed under the correction of error standard."). "If a Rule 11 violation is shown, an appropriate sanction is mandated, and we will affirm the particular sanction imposed by the trial court, including the reasonableness of any fee

---

**6.** At the hearing on the Kurzets' nunc pro tunc motion, Bailey–Allen's attorney asked that all the outstanding judgments be merged "to streamline it into one judgment." The trial court respond-

ed, "My immediate reaction is I agree. I think the whole case, the whole ball of wax, they're all together." The Kurzets' council replied, "I don't have a problem with that, your Honor."

award, absent an abuse of discretion." *Taylor,* 770 P.2d at 171.

In 1995 when Bailey–Allen filed its motion to set aside, Rule 11 provided in part:

> The signature of an attorney ... constitutes a certification by him that he has read the ... motion ...; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it ... an appropriate sanction....

Utah R. Civ. P. 11 (1995) (emphasis added) (amended 1997).

■ Bailey–Allen argues that "[u]nder Utah law, the trial court had the power to reform its pre-appeal partial summary judgment," and thus "Bailey–Allen could have pursued its motion in good faith and on the basis of existing law." Bailey–Allen cites *Board of Education v. Cox,* 16 Utah 2d 20, 395 P.2d 55 (1964), to support the proposition that the trial court was at liberty to reform its judgment. In *Cox,* the Utah Supreme Court explicitly limited its holding to the "particular facts" presented therein, *id.,* 395 P.2d at 56, and we find that *Cox* is readily distinguishable from this case. Indeed, we find Bailey–Allen's argument entirely without merit in light of the abundant authority supporting the proposition that " 'any portion of a judgment not appealed from continues in effect, regardless of the reversal of other parts of the judgment.' " *D'Aston,* 844 P.2d at 352 (citation omitted). Accordingly, the trial court erred as a matter of law when, on remand, it failed to impose sanctions upon the Kurzets' motion in response to Bailey–Allen's August 1995 motion to set aside.

■ Normally, the appropriate sanction for a Rule 11 violation is "the recovery of attorney fees incurred in obtaining attorney fees under Rule 11." *Taylor,* 770 P.2d at 172 n. 15. "If a party entitled to Rule 11 relief were required to bear the expense of securing it, the important policy embodied in Rule 11 would be vindicated only in cases where it made economic sense, i.e., where the sanction would clearly exceed the expense of securing it." *Id.* n. 15. However, this is not the "normal" case.

■ In seeking attorney fees under the Mechanics' Lien and Bond statutes after remand, the Kurzets brought their November 1994 motion before Judge Iwasaki instead of Judge Wilkinson, the trial judge for the case. At the November 21, 1995 hearing on the Kurzets' motion for sanctions, Judge Wilkinson clearly reviewed the tactics employed by both parties:

> [Bailey–Allen] has withdrawn [its] motion regarding the mechanic[s'] lien.... [The Kurzets have] asked for sanctions. Well, this gets extremely difficult. I don't think that [Bailey–Allen's] motion—I agree with [the Kurzets] that [Bailey–Allen's] motion, when they did not appeal, that [Bailey–Allen] had any cause to bring the motion back before the court [when it] should have been appealed. There[ is] no doubt in the court's mind on that.
>
> ....
>
> The only thing [the Kurzets] went to was having to file ... a memorandum stating that it ... should have [been] asked for on appeal. I don't think that additional time was spent there today.... I think the attorney[']s fees would be very nominal. The court of course—and ... I have said this, but I am going to say it again, that I think the [Kurzets were] wrong—and I'm not overruling it; it's not before me—I think [the Kurzets were] wrong in bringing the motion for attorney[']s [fees] before an additional judge, and I noted that counsel argued it was improper.
>
> And of course the court proceeded. I'm not finding fault with the [Kurzets] for getting the award; the judge saw fit to order it, but I think it was improper for [the Kurzets] to bring it before [Judge Iwasaki].
>
> But in a case of this type, and maybe to save attorney[']s fees, the attorn[ies] would

offset each other on that.... I guess what I am saying is that this case has gone on too much as far as ... personalities [are concerned]. I'm going to deny the motion for sanctions. I just don't think that they're necessary as far as the case is concerned.

Given the " 'trial court[']s great leeway to tailor the sanction to fit the requirements of the particular case,' " *R & R Energies v. Mother Earth Industries, Inc.,* 936 P.2d 1068, 1080 (Utah 1997) (quoting *Taylor,* 770 P.2d at 171), and because the trial court adequately considered the proceedings before Judge Iwasaki, the trial court did not abuse its discretion when it concluded that the fees incurred by the Kurzets in response to Bailey–Allen's motion to set aside should be offset by the extra appearance before Judge Iwasaki.

## CONCLUSION

For the foregoing reasons, and with the noted amendments to the trial court's Amended Findings and Conclusions, the judgment appealed from is affirmed.

WILKINS, Associate P.J., and BENCH, J., concur.