**Roland WEBB, Plaintiff and Appellee,**

v.

**R.O.A. GENERAL, INC., a Utah Corporation, William Reagan, Individually, William Adams, Esq., Individually, and Douglas T. Hall, Esq., Individually, Defendants and Appellants.**

Nos. 890164–CA, 890170–CA.

Court of Appeals of Utah.

Jan. 10, 1991.

Philip R. Fishler (argued), Stephen J. Trayner, Strong & Hanni, Salt Lake City, for defendants and appellants.

Ross C. Anderson (argued), Anderson & Watkins, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Appellants R.O.A. General, Inc. (R.O.A.) and William Reagan appeal from two partial summary judgments granted in favor of Roland Webb. We affirm.

## BACKGROUND

Webb and Reagan were shareholders, directors and officers in R.O.A. since its formation in 1981. R.O.A. resulted from the merger of Reagan Outdoor Advertising, Inc. and Galaxy Outdoor Advertising (Galaxy). Webb had been a director and shareholder in Galaxy. In 1977, Galaxy, through its five-person board of directors, decided to sell both its Wyoming and its Idaho divisions. The Wyoming division was purchased by Eldon Palmer, who had managed the division for Galaxy. Palmer purchased the division through a corporation formed by him, Palmer Outdoor Advertising. Prior to board approval of the sale to Palmer, Webb and Palmer agreed that Webb would assist Palmer in financing the purchase by guaranteeing fifty-one percent of the financing debt and paying part of the cash downpayment, in exchange for which he could obtain fifty-one percent of the stock in Palmer Outdoor Advertising. Galaxy's board of directors approved the sale to Palmer in February 1977.

In 1981, Webb and R.O.A. executed an employment agreement providing that Webb would work for R.O.A. and receive compensation as specified in the agreement, for a five-year term. The compensation was discontinued in 1984, prior to completion of the contract's full term.

Webb filed this action in 1987, alleging breach of the employment agreement and seeking full payment of compensation as provided in the agreement. R.O.A. answered, denying that the written agreement constituted the entire agreement between the parties, and claiming waiver and breach of the agreement by Webb. R.O.A. counterclaimed against Webb for breach of fiduciary duty because of his failure to disclose his agreement with Palmer to the Galaxy board of directors, predecessor in interest to R.O.A. After discovery, Webb filed two motions for partial summary judgment. One sought summary judgment on the claim for enforcement of the employment contract, and the other sought judgment in Webb's favor on the breach of fiduciary duty counterclaim. The trial court granted both motions after separate hearings, and certified each as a final appealable order pursuant to Utah R.Civ.P. 54(b). Appeals followed on both orders.[1] We consolidate the appeals for purposes of this opinion.

## SUMMARY JUDGMENT

Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Transamerica Cash Reserve v. Dixie Power*, 789 P.2d 24, 25 (Utah 1990). On appeal of a summary judgment, we view the facts in a light most favorable to the party who lost in the trial court. *Blue Cross and Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989). Determining whether the facts justify summary judgment is a question of law, and we give no particular deference to the trial court, but review for correctness only. *Id.*

## BREACH OF FIDUCIARY DUTY

R.O.A. claimed in its counterclaim that Webb usurped a corporate opportunity

---

1. A third appeal involving Webb's right as a shareholder to inspect R.O.A.'s books and records was decided in *Webb v. R.O.A. General, Inc.*, 773 P.2d 834 (Utah Ct.App.1989).

by not revealing to the Galaxy board the details of his arrangement with Palmer, whereby he was able to obtain fifty-one percent of Palmer Outdoor Advertising's stock. Webb asserts that: (1) the claim was not timely because it was brought more than three years after it arose; and (2) Webb fully disclosed the transaction to the Galaxy board. On appeal, R.O.A. claims the trial court erred in granting summary judgment because there are material issues of fact. We find that the claim was not timely filed and, therefore, do not reach the issue of whether there was full disclosure.

■ The doctrine of corporate opportunity forbids a corporate director from "acquiring for his own benefit an opportunity that would have been valuable and germane to the corporation's business, unless that opportunity is first offered to the corporation and declined...." *Nicholson v. Evans*, 642 P.2d 727, 730 (Utah 1982). The parties agree that the applicable statute of limitations is Utah Code Ann. § 78–12–27 (1987), which states as follows:

> Actions against directors or stockholders of a corporation to recover a penalty or forfeiture imposed, or to enforce a liability created, by law must be brought within three years after the discovery, by the aggrieved party, of the facts upon which the penalty or forfeiture attached, or the liability accrued, ...

*See Grosjean v. Ross*, 572 P.2d 1383, 1384 (Utah 1977). The statute begins to run when the aggrieved party "discovers, or in the exercise of reasonable care should discover, that there is a wrong to be complained of; ..." *Stewart v. K & S Co., Inc.*, 591 P.2d 433, 435 (Utah 1979). A party is charged with a duty to discover "when he was apprised of such facts and circumstances with respect thereto as would put a person of ordinary intelligence and prudence upon inquiry." *Jones Mining Co. v. Cardiff Mining & Milling Co.*, 56 Utah 449, 191 P. 426, 429 (1920).

We first set forth the evidence that the trial court had before it in considering the motion for partial summary judgment. Webb stated in his deposition that he could not recall telling the Galaxy board about his agreement with Palmer prior to the 1977 board approval. Webb testified he told two board members, Blaine Glassman and George Hatch, about the transaction in 1981 in a board meeting, and also told Reagan about it in 1981. In a subsequent affidavit, Webb stated that he had a conversation with George Hatch and his son, Jeff Hatch, after his deposition. He said that George Hatch reminded him that he had disclosed the proposed transaction with Palmer to the board prior to the February 1977 board meeting. Hatch also reminded him that no board member had any interest in retaining any ownership interest in the Wyoming division.

George Hatch testified in his deposition, that Galaxy had received two bids for the Wyoming division in addition to Palmer's, and that Palmer's was the highest. Webb asked if he could participate in the purchase of the Wyoming division. Hatch said he did not get very involved in the details, but was under the impression that Webb was helping Palmer with financing the purchase and believed it perhaps included guaranteeing a loan. Hatch's main focus was on how much was going to be paid for the division, and not on ownership details of the buyer. When Webb asked him if he objected to Webb's participating in the purchase, Hatch said he did not. Hatch also told the other directors what Webb had told him, particularly that Webb was helping Palmer with financing. Hatch said that Webb's interest in Palmer was also discussed in 1981, when the board was discussing the possible sale and merger into R.O.A. Blaine Glassman was present at the 1981 meeting. In an affidavit, Hatch stated that, prior to approving the sale to Palmer,

> Roland Webb informed me and the other members of the Board of Directors of Galaxy that he could structure a personally beneficial transaction with Eldon Palmer that would allow Roland Webb to acquire, without any cash payment by Roland, an interest in Palmer Outdoor Advertising, Inc., ... in exchange for Roland's future assumption or guarantee of the indebtedness of Palmer.

He further stated that the board was satisfied with the disclosure and told Webb they were not interested themselves and allowed Webb to take personal advantage of the opportunity.

Richard B. Paxman, an R.O.A. employee, provided an affidavit stating that he attended a meeting in 1981 with George Hatch and Jeff Hatch. George Hatch, in Paxman's opinion, had seemed "put out" about the fact that Webb had an interest in Palmer, and was surprised to learn about that interest. William Reagan's affidavit also states that in June 1981, Jeff Hatch stated that the Galaxy board found out about the Palmer transaction for the first time from Glassman's son, and that Webb had obtained the fifty-one percent equity interest surreptitiously.

While there is contrary evidence about whether Webb disclosed his agreement with Palmer in 1977, it is clear that the statute of limitations commenced to run by at least 1981, more than three years prior to the counterclaim. The testimony of Webb and Hatch is that Webb's interest in Palmer was discussed in 1981. The affidavits of Paxman and Reagan do not refute that evidence, and, in fact, support it. They both testified they knew of the transaction in 1981, as did George Hatch and Glassman's son. Therefore, it is undisputed that Galaxy's board and its successor, through William Reagan, knew of the arrangement with Palmer by at least 1981. It is not necessary that they then learned all the details of that transaction, but only that they had enough information to be on notice of a possible wrong. We conclude, therefore, that the court did not err in granting summary judgment to Webb because of the untimeliness of the breach of fiduciary duty claim.

## BREACH OF EMPLOYMENT CONTRACT

The employment agreement states that it is executed and effective August 1, 1981, and will remain in effect until August 1, 1986. It provides that Webb will serve as R.O.A.'s chairman of the board and vice president, that Webb "agrees to provide such other duties as may be assigned to him by the Board of Directors," and that Webb will use his "best efforts, skill and experience" in his employment with R.O.A. His compensation is set at $100,000 per year, to be paid in monthly installments, with additional compensation of one percent of annual net sales. Termination may occur only for fraud or gross malfeasance. In the event of Webb's death, the compensation will be paid to his estate. A letter agreement dated July 7, 1981 partially modifies the agreement's terms. It states that "trades" will be charged at fifty percent of face value and will reduce the compensation Webb is entitled to under the agreement. It also states that the compensation is

> non-cancellable for any reason, including death, and that it has been calculated based on [Webb] providing services in the first through fifth year of approximately 50% of [Webb's] time in the first year, and in each of the second through fifth years, the following respective percentages of [Webb's] time: 25%, 12½%, 7½%, 5%.

(Emphasis added.)

Webb was paid a portion of the $100,000 annual compensation until April 1984. He received no compensation under the one percent of net sales provision. In early 1984, the R.O.A. board adopted a resolution declaring a moratorium on payment of management compensation, effective April 1, 1984. Webb and one other director voted against the resolution. No further payments were made to Webb.

R.O.A.'s audited and unaudited financial statements accrued Webb's unpaid compensation in approximately the amounts claimed by him, as a long-term debt obligation. Correspondence to Webb from Reagan referred to "postponement" of management salaries and to continued management contract obligations, and, in one instance, acknowledged that Webb was owed approximately $360,000. Minutes of an R.O.A. board meeting indicate that trades versus cash payments to Webb were discussed, but that "[n]o real meeting of the minds resulted...." There are no

written documents contesting Webb's right to full payment as set forth in the agreement prior to the counterclaim.

In resisting Webb's action to enforce the agreement, R.O.A. asserts that the agreement and letter do not constitute an integrated contract, and that the actual intent of the parties was that the $100,000 consist of $85,000 cash and $15,000 in trades, and that the one percent of net annual sales was to be paid only if the company had available funds. R.O.A. further asserted that Webb breached the contract by not performing as agreed, and that he waived all claims for further compensation.

### Integrated Contract

■ If an agreement is integrated, the parol evidence rule excludes evidence of terms in addition to those in the agreement, thus excluding " 'contemporaneous conversations, statements, or representations offered for the purpose of varying or adding to the terms of an *integrated* contract.' " *Colonial Leasing Co. v. Larsen Bros. Const.*, 731 P.2d 483, 486 (Utah 1986) (quoting *Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985)). A nonintegrated contract may exist where the terms are not ambiguous, but the nature of the agreement itself is unclear. *Id.* "Only when contract terms are complete, clear, and unambiguous can they be interpreted by the judge on a motion for summary judgment." *Id.* at 488.

■ The trial court must first determine if the contract is integrated, i.e., an agreement "where the parties thereto adopt a writing or writings as the final and complete expression of the agreement. An integration is the writing or writings so adopted." *Eie v. St. Benedict's Hospital*, 638 P.2d 1190, 1194 (Utah 1981) (quoting Restatement, Contracts § 228). Extrinsic, relevant evidence is admissible to prove integration. *Id.* (quoting *Bullfrog Marina, Inc. v. Lentz*, 28 Utah 2d 261, 501 P.2d 266, 270 (1972)). If extrinsic evidence is considered to determine whether a contract is integrated, review by an appellate court is limited, as the parties' intent regarding integration is a factual question. *Kimball v.*

*Campbell*, 699 P.2d 714, 716 (Utah 1985); Utah R.Civ.P. 52(a).

■ There is a rebuttable presumption that a written contract which appears to be complete and certain is integrated. *Kimball*, 699 P.2d at 716; *Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985). Courts are not obligated to rewrite contracts entered into by parties dealing at arms' length, to relieve one party from a bargain later regretted, simply on supposed equitable principles. *Hal Taylor Assocs. v. Unionamerica, Inc.*, 657 P.2d 743, 749 (Utah 1982). The mere raising of a non-integration claim will not result in automatic admission of extrinsic evidence. In *Stanger v. Sentinel Sec. Life Ins. Co.*, 669 P.2d 1201 (Utah 1983), the Utah Supreme Court held that even where a contract was claimed to be only partially integrated, only

> parol evidence *not inconsistent with the writing* is admissible to show what the entire contract really was, *by supplementing, as distinguished from contradicting, the writing.* In such a case parol evidence to prove the part not reduced to writing is admissible, although it is not admissible as to the part reduced to writing.

*Id.* at 1205 (quoting 30 Am.Jur. 2d, *Evidence* § 1043) (emphasis added). *See also State Bank of Lehi v. Woolsey*, 565 P.2d 413, 418 (Utah 1977) ("parol evidence of contemporaneous conversations, representations or statements will not be received for the purpose of varying or adding to the terms of the written agreement"). Therefore, in most instances, where a binding agreement exists, whether completely or partially integrated, evidence of prior or contemporaneous agreements or discussions is not admissible to contradict terms of the written agreement. Restatement (Second), Contracts § 215.

A summary judgment was affirmed on the basis of the foregoing rationale in *Ron Case Roofing & Asphalt v. Blomquist*, 773 P.2d 1382 (Utah 1989). One party had offered extrinsic evidence to show the parties' intent regarding an allegedly nonintegrated contract. The supreme court observed that the party had ignored the clear

**552**

rule, that in interpreting a contract, "we first look to the four corners of the agreement to determine the intentions of the parties.... The use of extrinsic evidence is permitted only if the document appears to incompletely express the parties' agreement" or is ambiguous. *Id.* at 1385. The court further observed that the document in question appeared to completely express the parties' agreement and was comprehensive. As a result, the court found that the trial court had properly precluded the appellant from introducing extrinsic evidence "on the premise that the instrument is not complete." *Id.*

■ In this instance, R.O.A. sought to introduce evidence that the parties really intended to provide that Webb's compensation would consist of eighty-five percent cash and fifteen percent trades, and that the one percent of net sales would be paid only if the company showed a profit. Both are inconsistent with the written terms of the contract. We agree with the trial court that the agreement between Webb and R.O.A. is comprehensive and appears to fully express the parties' agreement. In addition, R.O.A.'s claims as to the parties' understanding are contrary not only to the terms of the integrated employment contract, but also to its own business records and correspondence. We find, therefore, that the trial court correctly held that extrinsic evidence was inadmissible to vary the terms of the contract.

### Waiver

■ R.O.A. claims that Webb waived his right to compensation under the agreement. Waiver is the "intentional relinquishment of a known right." *Barnes v. Wood,* 750 P.2d 1226, 1230 (Utah Ct.App. 1988). An intent to waive must be shown by action or conduct which is unequivocal and which is inconsistent with any other intent. *Id.* R.O.A. presented no competent evidence which could demonstrate an unequivocal intent by Webb to waive his contractual rights. Furthermore, Webb's vote against the payment moratorium and the ensuing correspondence demonstrate a clear lack of waiver.

### Breach of Contract

■ Finally, R.O.A. claims Webb breached the employment agreement by failing to fully provide services as he had agreed. R.O.A. offered evidence that Webb devoted less than forty hours per week to R.O.A. duties, and that he spent time working on personal matters. The contract, however, specifically states that Webb need devote only a maximum of fifty percent of his time, gradually reducing to five percent, on R.O.A. matters, and that he could use his remaining time as he wished. Furthermore, all correspondence between the parties after the moratorium on payment confirmed the obligation to compensate Webb as provided in the agreement, as did corporate financial records. Webb was answerable to R.O.A.'s board of directors, but no corporate minutes or other documents indicate any dissatisfaction with Webb's performance. We find that viewing the evidence in a light most favorable to R.O.A., there is no basis for the breach of contract claim. Therefore, the trial court did not err in granting summary judgment to Webb on that issue.

### CONCLUSION

We affirm the trial court's summary judgment dismissing R.O.A.'s claim for breach of fiduciary duty on the basis it was not timely filed. We further affirm the summary judgment for enforcement of the employment contract between Webb and R.O.A. on the basis that the contract is integrated, thus precluding parol evidence; that Webb did not waive his contractual rights; and that R.O.A. cannot claim breach.

BILLINGS and GARFF, JJ., concur.