2002 UT App 361

**Enoch Richard SMITH, as personal representative of the Estate of Enoch Smith Jr., Plaintiff and Appellee,**

v.

**D.A. OSGUTHORPE, an individual; and D.A. Osguthorpe Family Partnership, Defendants and Appellants.**

No. 20010530–CA.

Court of Appeals of Utah.

Oct. 31, 2002.

David W. Scofield, Parsons Davies Kinghorn & Peters, Salt Lake City, for Appellants.

·Hardin A. Whitney, Moyle & Draper, and Robert G. Wing, Prince Yeates & Geldzahler, Salt Lake City, for Appellee.

Before Judges JACKSON, BILLINGS, and THORNE.

## OPINION

BILLINGS, Associate Presiding Judge:

¶1 D.A. Osguthorpe and the D.A. Osguthorpe Family Partnership (collectively the Osguthorpes) appeal the· district court's grant of Enoch Richard Smith's motions for summary judgment and denial of the Osguthorpes' motions for summary judgment, to dismiss, and to amend. We affirm in part, and reverse and remand in part.

## BACKGROUND

¶2 Prior to 1966, Enoch Smith Jr. (Smith)[1] and D.A. Osguthorpe (Osguthorpe) were partners in a cattle and sheep business (the partnership). In November 1966, Smith and Osguthorpe entered into an agreement (the dissolution agreement) "to settle all of the rights between them in the partnership businesses and affairs."

¶3 Under the dissolution agreement, Smith agreed to sell Osguthorpe his interest in the partnership assets, subject to a reservation by Smith of a share of proceeds derived from the sale or lease of property (the disputed property), which is the subject of this appeal. In return, Osguthorpe agreed to pay Smith $50,000 and to assume partnership obligations.

¶4 Smith and Osguthorpe signed the dissolution agreement. Additionally, Osguthorpe's wife signed under a clause providing that "I ... agree that any interest that I may have in and to the [disputed property]

---

1. Enoch Richard Smith filed this action as the representative of the estate of his father, Enoch Smith Jr., who died on November 11, 1996. For convenience we refer to the two as Smith.

shall be subject to the provisions of said paragraph 1(g)" of the dissolution agreement. In January 1967, the dissolution agreement was recorded in the Summit County Recorder's Office.

¶ 5 Sometime after entering into the dissolution agreement, Osguthorpe conveyed part of the disputed property to the D.A. Osguthorpe Family Partnership (the family partnership). The family partnership included Osguthorpe's son Stephen.

¶ 6 On August 14, 1996, Osguthorpe and the family partnership entered into a twenty-eight-year agreement with Wolf Mountain Resorts, L.C. (Wolf Mountain) titled "Lease Agreement" (the lease). Under the lease, Wolf Mountain agreed to annually pay the Osguthorpes $100,000 to "lease[ ] . . . specific portions" of the Osguthorpes' property, including the disputed property, "for use as a commercial recreation area, including the installation, maintenance and operation of two ski lifts, snow making and clearing of ski trails and such other related facilities, structures and roads as may be required." The lease also required Wolf Mountain to permit the Osguthorpes "to improve and to use" the property provided the Osguthorpes did "not interfere with ski lifts and similar structures and runs of" Wolf Mountain.

¶ 7 Sometime in 1997, American Skiing Company (the Canyons) succeeded to Wolf Mountain's interest in the lease. On July 28, 1997, the Canyons, Osguthorpe, the family partnership, and Stephen, as an individual, amended the lease. This first amendment granted the Canyons the right to construct a ski trail, and the right to repair and construct additional roads and relocate and upgrade lifts subject to the approval of Stephen and the Canyons' director. The amendment required the Canyons to "include the Osguthorpes in their master planning process." The amendment also increased the annual rent to $150,000.

¶ 8 On August 10, 1998, the lease was amended a second time. This second amendment gave the Canyons the right to have alpine skiing operations and to construct another road subject to the approval of Stephen and the Canyons' director. The Osguthorpes retained the right to use and improve all of the property for their sheep and cattle ranching operations, so long as the same did not damage the Canyons' facilities or unreasonably interfere with the Canyons' winter use of the property. The amendment increased the annual payment to $200,000.

¶ 9 In November 1998, Enoch Richard Smith, as representative of Enoch Smith Jr.'s estate, brought a breach of contract action against the Osguthorpes, seeking a share of the lease payments. Smith filed a motion for partial summary judgment, contending the dissolution agreement entitled him to a share of the lease payments. The Osguthorpes filed a cross-motion for summary judgment, contending the dissolution agreement was unenforceable. Following a hearing, the district court granted Smith's motion for partial summary judgment.

¶ 10 Thereafter, the Osguthorpes' counsel withdrew and newly associated counsel filed a motion to reconsider the grant of partial summary judgment to Smith, asserting the dissolution agreement was unenforceable for want of consideration and under the statute of frauds. The Osguthorpes' new counsel also filed a second motion to amend their answer to assert, inter alia, fraud defenses and counterclaims. The district court denied the Osguthorpes' motion to reconsider, ruling that the dissolution agreement was integrated and satisfied the statute of frauds. The district court did not address the Osguthorpes' motion to amend.

¶ 11 Smith filed a second motion for summary judgment seeking damages of one-half of the lease payments in excess of $1.60 per acre. In response, the Osguthorpes asserted the lease payments were mainly for services rendered by Osguthorpe and Stephen, thus a material issue of fact existed as to the allocation of payments due Smith. The district court granted Smith's requested damages, concluding the lease payments were entirely for use of the disputed property not for services.

¶ 12 The Osguthorpes then filed a motion to dismiss for failure to join Stephen and the Canyons as indispensable parties. The district court refused to grant or deny the motion. Instead, the court ruled that although

the Canyons and Stephen did not have an interest in Smith's action generally, they had an interest with respect to its ruling that the lease payments were not for services. The court therefore invited the Canyons and Stephen to file memoranda in opposition to Smith's second motion for summary judgment.

¶ 13 The Osguthorpes now appeal the grant of Smith's motions for summary judgment and the denial of their motions for summary judgment, to dismiss, and to amend their answer.

## ISSUES AND STANDARDS OF REVIEW

¶ 14 The Osguthorpes argue the district court erred in granting Smith's motions for summary judgment.

> Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In determining whether the [district] court correctly found that there was no genuine issue of material fact, we accept the facts and inferences in the light most favorable to the [nonmoving] party. In deciding whether the [district] court correctly granted judgment as a matter of law, we give no deference to the [district] court's view of the law; we review it for correctness.

*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs.*, 2001 UT 54, ¶ 9, 28 P.3d 669 (second alteration in original) (quotations and citations omitted).

 ¶ 15 The Osguthorpes also argue the district court erred in not ordering joinder of Stephen and the Canyons. We review the district court's "rule 19 determination under an abuse of discretion standard." *Grand County v. Rogers*, 2002 UT 25, ¶ 27, 44 P.3d 734. However, the district court's "interpretation of ... rule [19] is a question of law that we review for correctness."

*Brown v. Glover*, 2000 UT 89, ¶ 15, 16 P.3d 540.[2]

## ANALYSIS

I. Is the Dissolution Agreement Enforceable?

¶ 16 The Osguthorpes raise a number of issues in contending the district court erred in enforcing the dissolution agreement. We consider each issue but conclude the district court did not err in concluding the dissolution agreement is enforceable.

A. Consideration of Parol Evidence in Determining the Dissolution Agreement is Integrated

 ¶ 17 The parol evidence rule "operates in the absence of fraud to exclude [prior and] contemporaneous conversations, statements, or representations offered for the purpose of varying or adding to the terms of an integrated contract." *Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985) (emphasis omitted). "An agreement is integrated where the parties thereto adopt a writing or writings as the final and complete expression of the agreement." *E'ie v. St. Benedict's Hosp.*, 638 P.2d 1190, 1194 (Utah 1981) (quotations and citation omitted).

 ¶ 18 "[A] court must first determine whether the writing was intended by the parties to be an integration. In resolving this preliminary question of fact, parol evidence, indeed any *relevant* evidence, is admissible." *Union Bank*, 707 P.2d at 665 (emphasis added). However, to preserve the integrity of written contracts, we apply "a rebuttable presumption that a writing which on its face appears to be an integrated agreement is what it appears to be." *Id.; see also Terry's Sales, Inc. v. Vander Veur II*, 618 P.2d 29, 32 (Utah 1980) ("Where parties have various claims and obligations to each other, and have had a discussion about resolving their disputes which results in a written

---

**2.** The Osguthorpes additionally argue the district court exceeded its discretion in failing to grant their second motion to amend. However, they fail to explain why the district court exceeded its discretion. They instead appear to ask this court to order the district court to allow amendment on remand. As Smith correctly notes, the Osgu-

thorpes have the option to seek amendment on remand. *See Call v. West Jordan City*, 727 P.2d 180, 181 (Utah 1986) (noting pleadings may be amended after remand "within the sound discretion of the [district] court so long as they do not cover issues specifically foreclosed by the appellate court").

agreement signed by them, it is generally to be assumed that their disputes were merged into the written agreement."). Further, a district court is not precluded from ruling that an agreement is integrated in granting a motion for summary judgment. If the "contract terms are complete, clear, and unambiguous[, they can] be interpreted by the judge on a motion for summary judgment." *Webb v. R.O.A. Gen., Inc.,* 804 P.2d 547, 551 (Utah Ct.App.1991) (quotations and citation omitted). We cannot say the district court erred in determining from the unambiguous terms of the dissolution agreement that it is integrated.[3]

¶ 19 The dissolution agreement provides that the parties "*now* desire to settle all of the rights between them." (Emphasis added.) Further, the agreement requires Osguthorpe to pay $50,000 to Smith within thirty days of the date of the agreement and "upon payment in full" requires Smith to execute and deliver assignments, deeds, and bills of sale necessary to convey his interest in the partnership businesses. Each party also agrees to "release and discharge" the other from all claims arising out of the partnership. We conclude the unambiguous language establishes that the dissolution agreement is integrated.

B. Consideration for the Dissolution Agreement

¶ 20 Next, the Osguthorpes argue that although in the dissolution agreement Smith purports to convey his interest in the disputed property, Smith had nothing to convey as Osguthorpe was at all times the owner of the property. Thus, they argue Smith's promise to sell subject to a reservation when

he had no interest to sell does not "suffice for consideration."

¶ 21 The dissolution agreement provides:

Except as hereinafter reserved to [Smith], [Smith] agrees to sell to [Osguthorpe] all of [Smith's] right, title, interest and estate in and to all partnership assets, and [Osguthorpe] agrees to purchase from [Smith] all of his said right, title, interest and estate in and to all partnership assets *upon the following terms and conditions,* to-wit:

1. *The partnership assets and properties covered hereby shall include:*

. . . .

(g) In addition to the above described property, [Smith] agrees to sell to [Osguthorpe], *his interest in the following described real property* located in Summit County, Utah, subject, however, to the reservation of interests therein by [Smith] as hereinafter specifically set forth:

[property description in metes and bounds].

(Emphasis added.)

¶ 22 The district court concluded the disputed property was a partnership asset based upon this declaration. We agree. Subparagraph (1)(g) falls under the paragraph providing that Osguthorpe "agrees to purchase ... all partnership assets *upon the following terms and conditions,*" and paragraph (1) providing that "*[t]he partnership* assets and *properties covered hereby shall include,*" and then listing the partnership properties. (Emphasis added.) In subparagraph (1)(g), Smith agrees to sell "*his interest in the following described real property.*" (Emphasis added.) Smith and Osguthorpe were agreeing that certain properties were

---

**3.** It is unclear whether the district court considered the parol evidence offered by the Osguthorpes in determining that the dissolution agreement is integrated. However, even if we were to conclude that the parol evidence was admissible to determine if the dissolution agreement is integrated and the court erred in not considering it, we conclude any error was harmless. The parol evidence does not establish that the dissolution agreement is not integrated.

In his affidavits, Osguthorpe attested that in 1966, he and Smith orally agreed to dissolve the partnership. Thereafter, he tendered $50,000 to Smith who accepted the payment. A few weeks later, Smith's attorney contacted Osguthorpe to sign the dissolution agreement, which Osguthorpe reviewed. Osguthorpe also attested that the $50,000 he paid Smith was equal to or greater than the then current market value of Smith's partnership interest and Osguthorpe received no consideration for signing the dissolution agreement. This testimony is not persuasive on the issue of integration.

partnership properties to the exclusion of other properties.[4]

¶ 23 The Osguthorpes argue the declaration alone is insufficient as a matter of law to establish that Smith had an interest in the disputed property because Smith was required to prove a conveyance, separate from the dissolution agreement, by Osguthorpe to Smith or their partnership that complied with the statute of frauds.

■ ¶ 24 To satisfy the statute of frauds, "[a]ll that is required is that the interest be granted *or declared* by a writing subscribed by the party to be charged." *Guinand v. Walton*, 22 Utah 2d 196, 450 P.2d 467, 469 (1969) (concluding letter stating partner was entitled to ten percent interest in partnership assets, consisting of leaseholds and interest in lands, satisfied statute of frauds) (emphasis added). The district court ruled that because the dissolution agreement declared the disputed property to be partnership property and it was signed by Osguthorpe, the party to be charged, the statute of frauds was satisfied. We agree with the district court that the dissolution agreement suffices to show that Smith had an interest in the property and therefore the dissolution agreement is supported by consideration.[5]

## II. Is the Reservation of a Share of the Lease Payments an Unreasonable Restraint on Alienation?

¶ 25 The Osguthorpes argue Smith's reservation of an interest in the sale and lease payments is void as an unreasonable restraint on alienation. Smith responds the reservation of a share of the lease payments is not a restraint on alienation but is merely an agreed upon method of splitting up the profits when the disputed property is leased. The reservation provides in relevant part:

In the event, however, that [Osguthorpe] or his successor or successors in interest, during the lifetime of the survivor of [Smith] and [Osguthorpe], plus twenty-one (21) years, in a good faith transaction, shall sell the property, or any part thereof at a price exceeding Twenty Dollars ($20.00) per acre, plus the depreciated cost of any fencing that [Osguthorpe] may have caused to be done on the property, then [Smith] shall share equally with [Osguthorpe] in the sales price paid over Twenty Dollars ($20.00) per acre, plus said depreciated fencing cost, and if, during said period of time he, or his successor or successors in interest in the property shall lease all or any part of the property, for any period of

---

4. The Osguthorpes argue the district court erred in refusing to consider parol evidence offered to support their contention that Smith's promise to sell the disputed property was illusory. Smith responds that because the dissolution agreement unambiguously declares that the disputed property was partnership property and Smith had an interest in such property, parol evidence is inadmissible. The Utah Supreme Court has recognized that parol evidence is admissible to show lack or want of consideration, *see Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985), and failure of consideration, *see Nielsen v. MFT Leasing*, 656 P.2d 454, 456 (Utah 1982). *But see Last Chance Ranch, Co. v. Erickson*, 82 Utah 475, 25 P.2d 952, 958 (1933) ("[I]f the consideration stated appears as a clear and unambiguous statement of part of the agreement, representing an actual contractual term and something more than a mere formal requisite, such a term of the contract must be regarded in the same light as any other material term of the contract and extrinsic evidence to vary or contradict it is inadmissible[.]" (Quotations and citation omitted.)). In his affidavit, Osguthorpe attested that he never transferred nor intended to transfer ownership of the disputed property to Smith or the partnership, nor is there any signed, delivered, or re-

corded deed doing the same. However, Utah's Partnership Act acknowledges that property may be conveyed to a partnership without transferring title. *See* Utah Code Ann. §§ 48-1-5, 48-1-7 (1998). Additionally, the dissolution agreement was recorded. We thus conclude that even considering the extrinsic evidence, there is no material issue of fact that precludes summary judgment. Our conclusion is further supported by the fact that Osguthorpe's wife signed the dissolution agreement under the clause providing, "I ... agree that any interest that I may have in and to the [disputed property] shall be subject to the provisions of said paragraph 1(g)."

5. The Osguthorpes also argue Smith's promise to sell some undefined "interest" in the property fails for lack of specificity under the statute of frauds. "[A] real property interest may be transferred through [a deed or] other documents and memoranda revealing an intent to transfer an interest in real property." *Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n*, 899 P.2d 779, 781 (Utah Ct.App.1995). Given that Smith promised to sell his entire interest in the partnership property, we conclude the statute of frauds is satisfied.

time commencing during said retained interest period, at a price in excess of $1.60 per acre per year, [Smith] shall share equally in the excess rental over the $1.60 per acre per year.

¶ 26 In *Redd v. Western Savings & Loan Co.*, 646 P.2d 761 (Utah 1982), the Utah Supreme Court recognized two types of restraints on alienation, direct and indirect. *See id.* at 764 (citing Restatement of Property § 404 (1944)). A direct restraint

"is an attempt by an otherwise effective conveyance or contract to cause a later conveyance (a) to be void; or (b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or (c) to terminate or subject to termination all or a part of the property interest conveyed."

*Id.* at 762 n. 1 (quoting Restatement of Property § 404). Traditionally, direct restraints have been held to be void. *See Page v. Page*, 15 Utah 2d 432, 394 P.2d 612, 613 (1964). We agree with the district court that the reservation of a share of the lease payments is not a direct restraint.

¶ 27 "An indirect restraint on alienation arises when an attempt is made to accomplish some purpose other than the restraint of alienability, but with the incidental result that the instrument, if valid, would restrain practical alienability." *Redd*, 646 P.2d at 764 (quotations and citation omitted); *see also* Restatement (Third) of Prop.: Servitudes § 3.5 (1998) ("An otherwise valid servitude is valid even if it indirectly restrains alienation by limiting the use that can be

made of the property, by reducing the amount realizable by the owner on sale or other transfer of the property, or by otherwise reducing the value of the property."). In *Redd*, the supreme court noted that an indirect restraint will "generally [be] upheld and enforced ... if it is found reasonably necessary to protect a justifiable or legitimate interest of the parties." 646 P.2d at 764.

¶ 28 The pivotal issue in the present case is whether the provision that Osguthorpe *share the lease payments* with Smith restrains practical alienability and thus is an indirect restraint on alienation.[6] Utah appellate courts have not considered this issue. However, *Holiday Out in America at St. Lucie, Inc. v. Bowes*, 285 So.2d 63 (Fla.Dist.Ct.App. 1973), is instructive. In that case, purchasers of condominium units brought an action to void, as an unreasonable restraint, a condominium declaration provision that gave the developer the exclusive right to rent the condominium units to the general public when the same were not occupied by the owners. *See id.* at 64. The provision required the developer to remit fifty percent of the rent to the owners to help pay for the units. *See id.* The Florida Court of Appeals concluded there was no restraint on alienation. *See id.* The court explained, "that the property may be less desirable (and hence less valuable) than would be the case if not subject to the rental restrictions ... simply does not constitute a restraint on alienation." *Id.*

¶ 29 Even if we were to hold the rent sharing provision in the present case is an indirect restraint, we would conclude it can

---

6. The Osguthorpes rely on *LaFond v. Rumler*, 226 Mich.App. 447, 574 N.W.2d 40 (1997); *White v. White*, 105 N.J.Super. 184, 251 A.2d 470 (Ch. Div.1969); *Dunlop v. Dunlop*, 144 Va. 297, 132 S.E. 351 (1926); and *Girard v. Myers*, 39 Wash.App. 577, 694 P.2d 678 (1985). However, these cases address distinguishable provisions requiring grantees to share in proceeds upon the *sale* of property, traditionally referred to as "quarter sales." The "quarter sale" provision in the dissolution agreement is not at issue in the present case.

Moreover, although quarter sales traditionally have been considered void as unreasonable restraints on alienation, *see, e.g., United States v. 397.51 Acres of Land*, 692 F.2d 688, 691–92 (10th

Cir.1982), the more modern view, according to the Restatement (Third) of Property, is that quarter sales are valid indirect restraints on alienation even though they reduce "the amount realizable by the owner on sale or other transfer of property, or by otherwise reducing the value of the property." Restatement (Third) of Prop.: Servitudes § 3.5 (1998). This is because "modern financing practices have led to acceptance of arrangements in which land buyers agree to share future appreciation with both sellers and lenders. Under [section 3.5 of the Restatement (Third) of Property], these arrangements are not invalid if there is some rational justification for requiring the grantee to share the proceeds with another." *Id.* § 3.5 cmt. c.

be enforced. Significantly, Redd was decided before section 3.5 of the Restatement (Third) of Property was adopted. Section 3.5 drops the requirement that an indirect restraint be reasonable, requiring only a rational justification for the restraint. *See* Restatement (Third) of Prop.: Servitudes § 3.5 cmt. a. We conclude under either the Redd reasonableness test or the more modern rational justification test, the reservation is not invalid.

¶ 30 *Kerley v. Nu–West, Inc.*, 158 Ariz. 344, 762 P.2d 631 (App.1988), is helpful. In that case, two landowners sold fifteen acres of their interest in a subdivision to a developer, subject to a reservation of ten percent of the gross sales price from the first sale of each improved parcel, and subject to a provision requiring the developer to develop and sell the land. *See id.* at 632–33. The reservation was a covenant running with the land and was binding on successive owners until the amount due on the first sale was paid. *See id.* at 633. The sellers and developer also agreed the sellers could repurchase the land that had not been developed or resold. *See id.* In considering whether the restraint was reasonable, the Arizona Court of Appeals considered whether:

"1. the one imposing the restraint has some interest in the land which he is seeking to protect by the enforcement of the restraint; 2. the restraint is limited in duration; 3. the enforcement of the restraint accomplishes a worthwhile purpose; 4. the type of conveyances prohibited are ones not likely to be employed to any substantial degree by the one restrained; 5. the number of persons to whom alienation is prohibited is small; 6. the one upon whom the restraint is imposed is a charity."

*Id.* at 634 (quoting Restatement of Property § 406 cmt. i (1944)).

¶ 31 In upholding the restraint, the Arizona Court of Appeals noted the sellers retained an interest in the adjoining land. *See id.* at 635. The court then emphasized the "whole purpose of the agreement was to develop and sell land—the very antithesis of the purpose of those practices that gave rise to statutes and decisions [traditionally] for-

bidding quarter sales and unreasonable restraints on alienation." *Id.* The court further emphasized the developer knew when he bargained for the agreement that he had to project his profit or loss plus the ten percent reservation on the price of the property. *See id.* The court also emphasized that although "[a]s written, the obligation to pay money [was] unlimited as to time ... [t]he law ... implie[d] that it [would] be carried out within a reasonable time." *Id.* Thus, although the power to trigger the obligation to pay the ten percent was within the developer's control, if the sellers took no legal action to see that the spirit of the agreement was enforced, "laches [might] foreclose [their] right to receive the ten percent payment" upon resale. *Id.* at 636.

¶ 32 In the present case, Enoch Richard Smith alleges his father's justification for the reservation was to allow him to participate in the disputed property's future increase in value. Further, the record shows the reservation did not prevent alienation twice—to the family partnership and to the Canyons. In fact, the Osguthorpes leased the property for twenty-eight years and it has been improved. Thus, we conclude the reservation of a share of the lease payments is enforceable.

III. Does the Dissolution Agreement Entitle Smith to Share in the Lease Payments Although the Osguthorpes Use Portions of the Disputed Property for Grazing?

¶ 33 The Osguthorpes assert the dissolution agreement provides that they do not have to share the lease payments with Smith so long as they use the disputed property for grazing in connection with their sheep and cattle operations.

¶ 34 The dissolution agreement provides:

So long as [Osguthorpe] shall use said real property as grazing lands in connection with his operation of a sheep or cattle business, [Osguthorpe] shall have the right to the possession and use of the property without compensation to [Smith], but he shall pay the taxes and any expense of maintaining the property. In the event, however, that [Osguthorpe] or his succes-

sor or successors in interest ... shall lease *all or any part of the property,* for any period of time commencing during said retained interest period, at a price in excess of $1.60 per acre per year, [Smith] shall share equally in the excess rental over the $1.60 per acre per year.

(Emphasis added.)

¶ 35 The Osguthorpes allege that Smith's counsel assured Osguthorpe that the dissolution agreement would only require him to share lease payments if he ceased using the property for grazing. We agree with the district court that the Osguthorpes' allegation is contrary to the unambiguous plain language of the agreement and that Smith is entitled to share in the lease payments even though the Osguthorpes continue to use part of the disputed property for grazing.

IV. Does the Dissolution Agreement Entitle Smith to Share in the Lease Payments?

¶ 36 The Osguthorpes argue that because the lease does not grant the Canyons an exclusive right of possession, Smith is not entitled to share in the lease payments under the dissolution agreement. They maintain the lease grants a nonexclusive easement because they retain the right to possess, improve, and control the property.

¶ 37 The dissolution agreement provides that Smith is entitled to share in lease payments if the Osguthorpes lease "any part" of the disputed property. The district court ruled the lease was for a leasehold interest. The court emphasized that the lease is titled "Lease Agreement" and identifies the Osguthorpes as the lessors and the Canyons as

the lessee. The court further emphasized that the lease requires the Canyons to pay "rent." Thus, the court ruled the dissolution agreement requires the Osguthorpes to share the lease payments. The Osguthorpes argue the district court elevated form over substance in focusing on the nomenclature "lease."

¶ 38 "A lease conveys an interest in land and transfers possession." *Keller v. Southwood N. Med. Pavilion, Inc.,* 959 P.2d 102, 107 (Utah 1998) (quotations and citation omitted). While a leasehold transfers exclusive possession, *see id.,* an easement is also an interest in land of another, although for a particular purpose, *see Warburton v. Virginia Beach Fed. Sav. & Loan Ass'n,* 899 P.2d 779, 781 (Utah Ct.App.1995); *see also Crane v. Crane,* 683 P.2d 1062, 1066 (Utah 1984) (recognizing commercial easements in gross as alienable property interests). We conclude the district court properly considered the lease language, although it is not determinative. We further conclude the dissolution agreement allows Smith to share in the lease payments, even if the Canyons' interest is an easement, as the dissolution agreement entitles Smith to share in the lease payments if the Osguthorpes lease "any part" of the disputed property and the agreement is silent as to exclusive possession.[7]

V. Do Issues of Material Fact in Regard to Allocation of the Lease Payments Preclude Summary Judgment on Damages?

¶ 39 The Osguthorpes maintain the district court erred in ruling that the entire payment due under the lease and the amendments is for use of the disputed property because the

7. The Osguthorpes also argue the lease grants only a license to the Canyons. A license "is the permission or authority to engage in a particular act or series of acts upon the land of another without possessing an interest therein." *Keller v. Southwood N. Med. Pavilion, Inc.,* 959 P.2d 102, 107 (Utah 1998) (quotations and citation omitted). The lease grants the Canyons the right to specific portions of the disputed property and it does so for twenty-eight years at a fixed annual rent. Although the Osguthorpes retain the right to improve the disputed property, they could not, under the original lease or first amendment, interfere with the Canyons' operations and cannot, under the second amendment, unreasonably interfere with the Canyons' winter operations. Thus, the district court appropriately acknowledged the Canyons has possession rights under the lease. Moreover, the lease allows the Canyons to make certain improvements to the property and the Canyons has in fact constructed and maintained ski lifts, roads, trails, and facilities on the property. Given that the Canyons has the right to run its operations with limited interference and to construct roads and trails, the tenancy term, and the fixed annual rent under the lease, we conclude the lease involves more than "permission or authority to engage in a particular act or series of acts upon the land." *Id.*

lease parties' deposition testimony and affidavits establish that the majority of the lease payment is for Stephen Osguthorpe's (Stephen) personal services.

¶ 40 The district court ruled the lease and the amendments are integrated. However, it is unclear from the district court's ruling whether the court considered the parol evidence offered by the Osguthorpes in so ruling. The court also ruled that any "side oral agreement" for services by Stephen violated the statute of frauds.

¶ 41 In first determining whether the lease and the amendments are integrated, the district court was required to consider "parol evidence, indeed any *relevant* evidence," *Union Bank v. Swenson*, 707 P.2d 663, 665 (Utah 1985) (emphasis added), "show[ing] the circumstances under which [they were] made and the purpose for which the instrument[s] [were] executed." *Eie v. St. Benedict's Hosp.*, 638 P.2d 1190, 1194 (Utah 1981) (quotations and citation omitted). However, to preserve the integrity of written contracts, our courts "presum[e] that a writing which on its face appears to be an integrated agreement is what it appears to be." *Union Bank*, 707 P.2d at 664; *see also Terry's Sales, Inc. v. Vander Veur II*, 618 P.2d 29, 32 (Utah 1980) ("Where parties have various claims and obligations to each other, and have had a discussion about resolving their disputes which results in a written agreement signed by them, it is generally to be assumed that their disputes were merged into the written agreement."). Further, a district court is not precluded from ruling that a contract is integrated in granting a motion for summary judgment. If the "contract terms are complete, clear, and unambiguous[, they can] be interpreted by the judge on a motion for summary judgment." *Webb v. R.O.A. Gen., Inc.*, 804 P.2d 547, 551 (Utah Ct.App.1991) (quotations and citation omitted).

¶ 42 The initial lease makes no reference to services, nor does it include any language that even ambiguously alludes to services. The first amendment provides that Stephen is to approve construction of certain roads and trails and the Canyons "will include the Osguthorpes in their master planning pro-

cess." It also provides the lease parties are to "work together in good faith" and "maintain open communications."

¶ 43 The Osguthorpes offered affidavits and deposition testimony that Osguthorpe and Stephen met with the Canyons after it succeeded to Wolf Mountain's interest in the lease. The Osguthorpes and the Canyons allegedly orally agreed that Stephen would assist the Canyons with obtaining permits and with the development of the disputed property. The Osguthorpes also offered two checks from the Canyons for the annual lease payment. The 1999 check listed Stephen as the payee.

¶ 44 In his deposition, Blaise Carrig (Carrig), the Canyons' director, testified that because of time constraints and the parties' relationship, the first amendment was brief and does not include a detailed description of the personal services. Carrig further testified that use of the property was worthless without the Osguthorpes' support in obtaining permits and "consultation to make the whole operation and planning ... work." Carrig also testified that the lease amendment language that the Canyons and the Osguthorpes agree to "work together in good faith" and "maintain open communications" establishes that part of the lease payment is for services.

¶ 45 We cannot determine from the record whether the district court considered the offered parol evidence to determine as a threshold matter whether the lease and the amendments are an integrated agreement. *See Colonial Leasing Co. of New England, Inc. v. Larsen Bros. Constr. Co.*, 731 P.2d 483, 486 (Utah 1986) ("Because the parol evidence rule applies only if the writing was intended by the parties to represent the full and complete agreement of the parties, the [district] court must first determine whether the writing was intended to be an integrated agreement."). We also cannot say as we did with the dissolution agreement that the terms of the informal lease and amendments are "complete, clear, and unambiguous." We conclude the parol evidence offered by the Osguthorpes was relevant to whether the lease and the amendments constitute an integrated agreement. We also conclude that if

the district court determines after considering this parol evidence that the lease and the amendments are not an integrated agreement, then there is a material issue of fact as to damages. We therefore remand for the court to consider the parol evidence or to make clear that it considered the parol evidence in ruling that the lease and the amendments are integrated. If the court did not consider the parol evidence, the court must consider such evidence to determine whether the lease and the amendments are an integrated agreement to pay exclusively for the use of the disputed property or whether the lease parties also have an agreement for services and the appropriate allocation of damages.

¶ 46 On remand the district court should make clear it considered the parol evidence in ruling the lease and the amendments are integrated or it should take evidence to determine if the lease and the amendments are integrated. The district court should determine based on the lease and the amendment terms, testimony of the parties to the lease and the amendments, and the circumstances surrounding their execution if they are integrated. Even if the evidence offered on remand "is uncontroverted, [the district] court is free to disregard such [evidence] if it finds the evidence 'self-serving and not credible.' " *Glauser Storage, L.L.C., v. Smedley*, 2001 UT App 141, ¶ 24, 27 P.3d 565. Thus, we note that even if the parties' testimony is uncontroverted, the court may determine under the circumstances the lease and the amendments are integrated, *cf. Webb*, 804 P.2d at 551, and that the lease payments are for use of the disputed property not for services. If the court determines the lease and the amendments are not integrated, then summary judgment would not be appropriate as there would be disputed issues of fact. The court then must ultimately hear testimony to determine if there is a valid, enforceable agreement—e.g., which is not barred by the statute of frauds and which is not unenforceable for lack of definiteness—to apply part of the annual lease payments as payment for personal services. If such an agreement exists, the court should also determine what portion of the lease payments is for use of the disputed property, determine

what portion is for services, and establish damages based thereon.

### VI. Did the District Court Err by not Ordering Joinder of Stephen and the Canyons?

¶ 47 In essence, the Osguthorpes argue the district court erred by inviting, rather than ordering, joinder of Stephen and the Canyons because they are indispensable parties. Under Rule 19 of the Utah Rules of Civil Procedure, a party must be joined if that party is necessary and it is feasible to join that party. *See* Utah R. Civ. P. 19. "The underlying purpose of rule 19 requiring joinder of necessary parties is ' "to protect the interests of absent persons as well as those already before the court from multiple litigation or inconsistent judicial determinations." ' " *Grand County v. Rogers*, 2002 UT 25, ¶ 28, 44 P.3d 734 (quoting *Landes v. Capital City Bank*, 795 P.2d 1127, 1130 (Utah 1990)) (other citation omitted).

¶ 48 "Under rule 19, the [district] court must first determine whether a party is necessary." *Id.* at ¶ 29. A party is necessary if:

"(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (I) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

*Id.* at ¶ 28 (quoting Utah R. Civ. P. 19(a)). If the court concludes a party is necessary, "the court must next consider whether joinder of the necessary party is feasible." *Id.* at ¶ 29. If joinder is feasible, the necessary party " 'shall be joined.' " *Id.* (quoting Utah R. Civ. P. 19(a)).

¶ 49 The district court concluded that although Stephen and the Canyons did not have an interest in Smith's action generally, they did have an interest in the court's ruling that the lease payments were for use of the disputed property not for personal

services. The court then invited Stephen and the Canyons to file memoranda in opposition to Smith's motion for summary judgment in regard to damages. Stephen filed a memorandum in opposition and an affidavit. The Canyons declined to do the same.

¶ 50 In their opening brief, the Osguthorpes fail to discuss specific facts showing how Stephen or the Canyons, "based on the criteria set forth in rule 19(a), [are] necessary part[ies] to this action." *Green v. Louder*, 2001 UT 62, ¶ 44, 29 P.3d 638. Nor do they explain why the authorities they cite compel this court to reverse the district court.

¶ 51 "Without more, delay is not a proper reason to deny joinder under [r]ule 19." *Le-Pet, Inc. v. Mower*, 872 P.2d 470, 473 (Utah Ct.App.1994). However, in this case, Stephen was a party to the litigation as a member of the family partnership; yet, Osguthorpe and the family partnership did not seek joinder until after Smith's motion for summary judgment on damages had been granted. We also disagree that Stephen's ability to protect his interest is impaired. In his affidavit, he attested that Osguthorpe allocates the lease payments. There is no evidence that he has not received any payment due him, although the record includes a letter to the Canyons indicating Stephen will no longer perform services.

¶ 52 Further, rule 19 allows joinder where there is a "substantial risk" of inconsistent obligations. Utah R. Civ. P. 19(a). Here, according to Stephen's affidavit, Osguthorpe allocates the lease payments. Arguably, Stephen's interest and the Canyons' interest in the district court's ruling in regard to the lease payments are identical—they both share a concern that services are a significant part of the lease payments. Although the Canyons is not bound by the district court's decision, it seems likely that an action by the Canyons against Stephen for services would be unsuccessful. *Cf. Boczon v. Northwestern Elevator Co.*, 652 F.Supp. 1482, 1486 (E.D.Wis.1987) (recognizing "[n]o substantial risk of incurring inconsistent obligations exists where there is only a risk of a frivolous lawsuit, or where the absent party has no cause of action against parties already

named" (citation omitted)). Thus, we cannot say the district court erred in not ordering joinder of Stephen and the Canyons in the first proceeding. However, we note the issues presented in regard to the integration of the lease and damages on remand may well require a different result.

## CONCLUSION

¶ 53 We conclude the dissolution agreement is integrated and enforceable. We further conclude Smith is entitled to share in the lease payments even though the Osguthorpes still use the disputed property for grazing and the Canyons' possession of the same may not be exclusive. However, the district court was required to consider extrinsic evidence in determining as a threshold matter whether the lease and the amendments are integrated. We therefore reverse in part and remand for consideration of this evidence and for proceedings consistent with this opinion.

¶ 54 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and WILLIAM A. THORNE JR., Judge.